JOSEPH F. DAVIS *vs.* CITY OF BOSTON.

Suffolk. March 2, 1881; January 24. — June 26, 1882.

A child, who is excluded from a public school in a city by a teacher acting with-
out authority from the school committee, cannot maintain an action against the
city, under the Gen. Sts. *c.* 41, § 11, without first appealing to the school com-
mittee.

TORT under Gen. Sts. *c.* 41, § 11, brought in the name of the
plaintiff by his next friend to recover damages for the unlawful
exclusion of the plaintiff from the Harvard Grammar School, in
the Charlestown District of Boston, by the principal of the
school.

At the trial in the Superior Court, before *Allen*, J., the plain-
tiff's evidence tended to prove that the plaintiff was fourteen
years of age, a legal resident of said district, and that he had
attended said school for several years previously to the alleged
exclusion; that the teacher, who had charge of the class in
which the plaintiff was, had occasion to administer corporal
punishment to him for disobedience and impertinence in school;
that the plaintiff refused to submit to punishment, and was told
by his teacher to go to the principal of the school in another
room in the same building; that the plaintiff, instead of going
to the principal, went home, and after several days returned and
offered to the teacher to submit to punishment; that the teacher
commenced to punish the plaintiff, but before the punishment
was completed the plaintiff refused to submit to further punish·
ment, and was told by the teacher to go to the principal, and
again went home; that this was repeated several times, the plain-
tiff each time, when ordered to report himself to the principal,
absenting himself for several days, and then returning and offer-
ing to submit to punishment, and, after the punishment was partly
inflicted, refusing to submit to further punishment; that on the
last occasion the teacher ordered him to go home, and told him
that he could not return to his class until he had submitted to
punishment; that afterwards, on the same day, the plaintiff,
with his father, went to the school, and had an interview with
the principal, Mr. Eaton. The plaintiff testified, that his father
had some conversation with Mr. Eaton alone; that Mr. Eaton

then called the plaintiff in, and asked him if he was ready to receive his punishment; that the plaintiff said he was; that Mr. Eaton then asked him if he was willing to receive his punishment, and the plaintiff answered that he could not say that he was willing, but that he would receive his punishment; that Mr. Eaton told him that he could not punish him unless he said that he was willing; that the plaintiff said he could not say he was willing, as he did not think he had done anything to be punished for, but that Mr. Eaton might punish him; that Mr. Eaton said he could not punish him unless he said he was willing, and told him to go home. The father of the plaintiff testified that he told Mr. Eaton to punish the plaintiff as he would one of his own children; that the plaintiff told Mr. Eaton that he would take his punishment; that Mr. Eaton asked him if he was willing to be punished, and the plaintiff answered that he could not say that he was willing; that Mr. Eaton said that the school committee would not allow him to punish the plaintiff unless he said that he was willing to be punished; that Mr. Eaton told the plaintiff to go home, and that he would not have him in school unless he said he was willing to be punished. The plaintiff's testimony also tended to prove that the punishment inflicted on him by the teacher, when he refused to submit to further punishment by her, was excessive. On all the above matters there was conflicting evidence introduced by the defendant.

The father of the plaintiff further testified, for the plaintiff, that, in answer to a written request, he received from Mr. Eaton a letter, dated February 24, 1880, as follows: " In response to your request why your boy ' has been excluded from school,' I have to say what you already know: (1.) that he has not been absolutely excluded from school; and (2.) that I am willing to receive the boy, when he comes in an obedient spirit and willing to receive his punishment, to be given for impertinence to his teacher. Allow me further to state, that, if you are dissatisfied with my methods of discipline, you can properly appeal to the school committee."

The plaintiff contended that the questions, whether the punishment inflicted by the teacher was excessive, and whether the condition on which the principal would allow the plaintiff to

remain in the school was unreasonable, were material questions in determining whether he had been unlawfully excluded from the school, which should be submitted to the jury upon the above evidence.

The judge ruled that the evidence offered by the plaintiff was not sufficient to sustain the action, and directed a verdict for the defendant, and reported the case for the determination of this court.

*J. H. Cotton*, for the plaintiff.

*T. M. Babson & F. Ames*, for the defendant.

MORTON, C. J. This action is brought under the statute, which provides that "a child unlawfully excluded from any public school shall recover damages therefor in an action of tort, to be brought in the name of such child by his guardian or next friend against the city or town by which such school is supported." Gen. Sts. *c.* 41, § 11. Pub. Sts. *c.* 47, § 12.

The evidence, viewed in the light most favorable to the plaintiff, tended to show that he was guilty of several acts of disobedience and insubordination in the school, for which the teacher sent him to his home; that afterwards his father returned with him and had an interview with the principal of the school, in which the principal said that the school committee would not allow him to punish the plaintiff unless he said that he was willing to be punished, and, upon the plaintiff's refusing to say so, he told him " to go home, and that he would not have him in school unless he said he was willing to be punished." The father afterwards requested the teacher to state the grounds upon which the boy had been " excluded from school; " and received an answer which is set forth in the report. Thereupon, without any appeal to the school committee, this action was brought.

We are of opinion that the Superior Court rightly ruled that the action could not be maintained. The intention of the statute is to give a remedy to a child who is unlawfully excluded from school by the proper authorities, who in this matter represent the city or town. A teacher has no authority to exclude a child from school, unless he acts under the order of the school committee, of which there was no evidence in this case. The laws vest in the school committee the charge and superintendence

of the schools. They alone have the right to exclude any child from school.

If a teacher sends a child home from school, there is no hardship in requiring the parent to appeal to the committee. Unless the teacher is acting under some order of the committee, this is the only way of ascertaining whether the proper authorities, for whose action the city or town is made responsible, have excluded the child. On the other hand, to hold that, whenever a teacher sends a child home as a punishment, the parent may treat it as an expulsion, and sue the city or town, would lead to vexatious litigation and impair the discipline and usefulness of the schools. *Spear* v. *Cummings*, 23 Pick. 224. *Sherman* v. *Charlestown*, 8 Cush. 160. *Hodgkins* v. *Rockport*, 105 Mass. 475. *Learock* v. *Putnam*, 111 Mass. 499.

The plaintiff in this case therefore has failed to show an expulsion from school for which the city is liable under the statute.

*Judgment on the verdict.*