No. 13,019.

## FERTICH v. MICHENER.

SCHOOLS.—*Rules and Regulations.*—*Power of School Boards to Adopt.*—Under the statutes of this State, construed in connection with the incidental powers of corporations, the various school boards, and other educational authorities, have power to adopt appropriate rules and regulations for the government of the schools under their control.

SAME.—*Method of Adopting Rules.—Superintendent or Teacher May Make.*— It is not necessary that all rules for the discipline and government of schools shall be made a matter of record by the school board, or that every act, order or direction affecting their management shall be authorized or confirmed by a formal vote; but any reasonable rule adopted by a superintendent or a teacher, not inconsistent with some statute or some other rule prescribed by higher authority, is binding upon the pupils.

SAME.—*City Schools.—Authority of Superintendent.*—A rule requiring the superintendent of city schools to visit weekly all the schools under his charge, and to see that the best methods of instruction are adopted, confers upon him authority, if it were otherwise wanting, to order and promulgate such additional reasonable rules as the best interests of the schools may require.

SAME.—*Tardy Pupils.—Exclusion from School-Room During Opening Exercises.—Reasonableness of Rule.*—A rule requiring tardy pupils to remain either in the hall of the school building, which is provided with heat, or in the office of the principal, until the opening exercises, lasting from ten to fifteen minutes, are concluded, in order that such exercises may not be interrupted or disturbed, is in itself a reasonable regulation.

SAME.—*Enforcement of Rules.—Must be Reasonable Under the Circumstances.*— In the enforcement of all rules for the government of a school, due regard must be had to the health, comfort, age, mental and physical condition of the pupils, and to the circumstances attending each particular emergency, and the condition of the weather, the infirmity of a pupil, and the like, may require relaxation in their strict enforcement.

SAME.—*Unreasonable Enforcement of Reasonable Rule.*—A school regulation must not only be reasonable in itself, but its enforcement must also be reasonable under all the circumstances. The habit of locking the doors of a school-room during the opening exercises is not an unreasonable enforcement, under ordinary circumstances, of a rule requiring pupils to remain in the hall during that time; but if the weather is unusually severe, and proper steps are not taken for the comfort of children thus excluded, such method of enforcement is unreasonable and improper.

SAME.—*Liability of School Officer.—Error of Judgment.*—A school officer is not personally liable for a mere mistake of judgment in the government of his school; but to create liability it must be shown that he acted in the matter complained of wantonly, wilfully or maliciously.

SAME.—*Detention of Pupil After School Hours.—False Imprisonment.*—The detention of a pupil for a short time after school hours, as a penalty for some omission or misconduct, is one of the recognized methods of enforcing discipline and promoting the progress of the pupils in the common schools, and although the detention be mistaken it possesses

none of the elements of false imprisonment, unless imposed from wanton, wilful or malicious motives.

SAME.—*Reasonableness of Rule a Question of Law.*—*Instruction.*—It is for the court to determine, as a matter of law, whether or not a rule is a reasonable one, and an instruction which confounds the reasonableness of the rule with its unreasonable enforcement, and submits the matter of reasonableness to the jury as a hypothetic question, dependent upon the existence or non-existence of certain enumerated facts, thus making the question of validity one of mixed law and fact to be determined by the jury, is erroneous.

From the Shelby Circuit Court.

*D. L. Wilson, J. B. McFadden* and *L. F. Wilson*, for appellant.

*B. F. Love, O. J. Glessner, E. K. Adams, L. J. Hackney, H. C. Morrison* and *N. B. Berryman*, for appellee.

NIBLACK, J.—This was an action by Nora S. Michener, a minor child, acting through Louis T. Michener, her father and next friend, against William H. Fertich for alleged injuries received while attending a public school of which Fertich was the superintendent.

The complaint was in three paragraphs. The first charged that the plaintiff, during the school year commencing in September, 1884, was a resident of the city of Shelbyville in this State, and was a pupil at one of the public schools of that city ; that, on the morning of the 22d day of January, 1885, which was an extremely cold day, the plaintiff, during school hours, repaired to the room in the public school building in which she was accustomed to receive, and for the purpose of receiving, instruction from her teacher ; that she found the doors of her school-room locked, by reason of which she was unable to gain admittance, and was compelled to return to her home through snow and cold, which resulted in her having both of her feet frozen, and being thereby permanently injured, to her great damage ; that she was so excluded from her school-room by order of the defendant, and that her injuries were not in any respect caused by any fault or negligence on her part.

The second paragraph charged the defendant with having, on the 15th day of January, 1885, wrongfully and unlawfully restrained the plaintiff of her liberty for a period of thirty minutes.

The third paragraph charged that, on the 15th day of October, 1884, a certain rule for the government of the public school which the plaintiff was attending, as in the first paragraph stated, was in force and was in the following words: " When pupils respectfully ask permission to leave their room they must be permitted to do so ;" that on that day the plaintiff, having a pressing necessity to do so, respectfully asked permission to leave her room, but that her teacher, acting under the order of the defendant, refused such permission, by reason of which she, the plaintiff, was subjected to great suffering and annoyance, and to consequences both repulsive and humiliating, and to her great damage.

The defendant answered :

*First.* That the hall in the school-building leading to the plaintiff's school-room, and where she entered the building and remained until leaving for home, was, on the morning complained of, comfortably warmed by a furnace immediately under it; that the daily sessions of the school were from 8 :45 A. M. until 11 : 45 A. M., and from 1 : 15 P. M. until 4 : 15 P. M., which times had been fixed and notice thereof published by the board of school trustees of the city of Shelbyville, and of which the plaintiff had been fully informed; that, prior to the commission of the alleged grievances stated in the first paragraph of the complaint, the plaintiff had been instructed by her teacher that if she came to school after 8 :45 A. M. and before 9 o'clock A. M., she should remain in the hall of the school-building, or go into the office of the principal of the school, in the same building, and remain there until the conclusion of the morning exercises, which last from ten to fifteen minutes, and which at no time extend beyond 9 o'clock A. M.; that the plaintiff, on the morning of the day named in said first paragraph of the com-

plaint, came to the school-building after the morning exercises had begun, and, finding that she was not in time for such exercises, remained in the hall, which was then comfortably warm, for a period of seven minutes, when she left for home of her own accord, and without the knowledge or consent either of her teacher or of the defendant, thereby unnecessarily exposing herself to the snow and cold; that at no time during that morning was the defendant nearer than a distance of a half mile from said school-building; that if the plaintiff received any injury on the morning in question it was by reason of her own fault and negligence, and not on account of any act or omission of the defendant.

*Secondly.* Repeating the substantial facts set up in the first paragraph, but in a different and more condensed form.

*Thirdly.* That, as to the charge contained in the second paragraph of the complaint, the plaintiff was never kept or detained in the school-building, to which reference has been made, later than 4:15 P. M., the time fixed by the school trustees for the closing of the daily sessions of the school.

*Fourthly.* In general denial.

Issues were formed upon the first, second and third paragraphs of the answer by a reply in denial. A trial resulted in a verdict for the plaintiff and in a judgment on the verdict.

This action was avowedly commenced, and this appeal is seemingly prosecuted, more for the purpose of settling some general principles concerning the management of our public schools, than on account of the amount of damages actually involved in the controversy.

It was shown by the evidence that the school trustees of the city of Shelbyville, in May, 1884, appointed Fertich, the appellant, superintendent of the public schools of that city for the ensuing school year, and that he was, in connection with his duties as such superintendent, to perform some services as a teacher in the city high school, if required to do so; also, that such trustees had already adopted and promulgated

a system of rules for the government of the public schools of the city, nearly all of which were read in evidence.

One of these rules prescribed the time to be occupied by the daily sessions of the schools, which was, in substance, as stated in the first paragraph of the answer. Another declared the right of every pupil to retire from the school-room when permission was respectfully asked, as set out in the third paragraph of the complaint. Others pertained to the duties of teachers, and still others had reference to the powers and duties of the superintendent.

The first of this latter class of rules was as follows:

"The superintendent shall have the supervision of all the schools and the general care of all school property, and act under the advice and direction of the board of trustees."

The second declared that "He" (the superintendent) "shall be especially charged with the enforcement of the rules of the board, and be held responsible for the general management and discipline of the school."

The third required the superintendent to visit weekly all the departments of the schools under his charge, and to see that the best methods of instruction were adopted.

The fourth required the superintendent to appoint meetings of teachers as often as necessary to secure uniformity of teaching and discipline, and to report to the trustees when a teacher should be found to be deficient and incompetent.

It was further made to appear that it was, and had previously been, the custom in the school which the appellee had been attending, to devote the first fifteen minutes after meeting in the morning to what was termed the opening, or morning, exercises, which consisted of prayers, chants, singing, reading, recitations, invocations and impressive short lessons, varied from time to time in the discretion of those in the immediate charge of the school; that on the morning of the 22d day of January, 1885, the temperature of the atmosphere stood at about 18° below zero, and that on that morning the appellee did not reach the school-building until

after the opening exercises had begun; that she found both of the doors leading to her school-room from the hall of the building locked; that she tried both doors, and could not gain admission; that the janitor of the building invited her to approach the register in the hall, which was apparently in reasonably well heated condition, and warm herself, but that she declined under the belief that she was not allowed to stand by the register without first obtaining the consent of her teacher; that she had forgotten, if she ever knew, that she had the right to go into the principal's office and to remain there until the opening exercises were over; that she, after remaining in the hall six or seven minutes, and finding that her feet were becoming quite numb and cold, left the building and returned home; that on her way home her feet became frost-bitten or frozen; that, in consequence, she became lame and disabled, and suffered great pain at times thereafter.

It was still further shown to have been the policy of the appellee's teacher to discourage the pupils, so far as practicable, from retiring from the room during school hours, and that the appellant had concurred in that general policy, but there was no evidence tending to show that he had ever instructed the appellee's teacher not to permit her, or any one else, to retire when permission was properly asked; that the class to which the appellee belonged was usually dismissed as early as fifteen minutes past three o'clock in the afternoon; that the appellee, in common with other pupils, was sometimes detained, or *kept in*, as it was usually termed, for ten or fifteen minutes after the class was dismissed, and required to further study her lessons during that additional time; that the appellee usually had the impression, when she was kept in, that it was as a penalty for having retired from the room during the day, but as to the extent to which she was justified, if at all, in receiving such an impression, the evidence was conflicting; that some time in October, 1884, the appellee asked permission to retire from her school-room,

but that permission was refused upon the ground that the school would close for the day in ten or fifteen minutes; that, in consequence of such refusal, the appellee suffered annoyance and inconvenience and was subjected to shame and humiliation on her way home, she having an infirmity which required her frequent retirement.

It was also an admitted fact that, soon after the commencement of the school year of 1884 and 1885, the appellant directed the teachers under his charge to instruct their pupils that when any one of them should be *tardy*, that is, should not arrive at the school building until after the opening exercises for the day had begun, he or she should remain either in the hall, or in the principal's office, until such exercises were over, and that the instructions so to be given were to constitute a rule to be observed in the schools of the city; and the evidence tended to show that the appellee's teacher had to some extent, and at least in a general way, instructed her pupils as directed.

One of the teachers testified that when the appellant directed his teachers as stated, he assigned as a reason for ordering the promulgation of such a rule, that the character of the opening exercises was such that the coming in of pupils during their progress seriously disturbed them, and that, in answer to an inquiry as to how such a rule could be effectively enforced, he said that if he were a teacher he would not hesitate to lock the doors of his room if necessary; and the evidence further tended to show that the appellee's teacher was in the habit of causing the doors of her room to be locked while the opening exercises were being holden.

The appellant in his testimony admitted that he had on one occasion, not specifically described, directed the doors of the school-rooms to be locked, but denied that he had given any such a direction at the time the appellee was locked out, or that he had ever given any general direction that the doors should be locked during the opening exercises, and

there was no evidence tending to prove that he had ever actually given any such a general direction.

It was further made to appear that, on the morning during which the appellee had her feet frozen, the appellant was not at, or immediately near, the building which the former attended, and that the latter was only occasionally at that building.

The court gave to the jury an elaborate and what seems to have been a carefully prepared series of instructions.

The sixth of the series was as follows: "What a reasonable rule is, is a question of law, and I do not hesitate to declare a rule that would bar the doors of a school-house against a little girl ten years of age, who had come one-fourth of a mile to school of a cold winter morning, when the earth was covered with snow, and the thermometer registering 18° below zero, exposing her to the cold, or excluding her from the fire, for no other reason than that she was a few minutes tardy, is unreasonable, and in its practical operation little less than wanton cruelty, and, therefore, unlawful, and can not justify the conduct of any teacher who enforces it, immaterial by what school authority enacted or directed."

The eighth instruction told the jury that "A rule or regulation made by a teacher, requiring pupils who are tardy to remain in the hall of the building, outside of the school-room, during the opening religious, sacred or singing exercises, to avoid interruption or confusion incident to their entry at such a time, for the space of fifteen minutes, is a reasonable rule and lawful, provided the hall is comfortable, and provided the hall is prepared to accommodate the needs and comforts of the pupils, and the doors may be closed and locked during this fifteen minutes if necessary to enforce observance of the rule ; but if the hall is cold and uncomfortable the rule is not a reasonable one, and should not be enforced."

When a corporation is duly erected or established, the law tacitly annexes to it the power of making suitable rules, reg-

ulations, by-laws, or ordinances for its own government and for the government of those over whom it may have jurisdiction or control. While this power of making such rules, regulations, by-laws or ordinances, as the case may be, is usually conferred in direct terms by the act of incorporation, it is nevertheless incidental to every corporation, whether municipal or private. 1 Blackstone Com. 476; 1 Dillon Munic. Corp. (3d ed.), section 308 and notes.

All by-laws and ordinances, and rules and regulations of the same general nature, must be suitably adapted to the purposes for which the corporation was organized, and can not be either inconsistent with the general law or the act of incorporation, or unreasonable or oppressive. Whether a by-law, or other kindred regulation, is reasonable or valid, is a a question of law for the decision of the court, and hence not a question of fact for the determination of the jury. Dillon, *supra,* section 327; *Green* v. *City of Indianapolis,* 22 Ind. 192; *State, ex rel.,* v. *White,* 82 Ind. 278 (42 Am. R. 496); Angell & Ames Corp., section 357; 1 Morawetz Private Corp., section 497.

Section 4438, R. S. 1881, which has been in force since March 6th, 1865, declares each civil township and every incorporated town and city of the State to be a distinct municipal corporation for school purposes.

The next succeeding section requires the common council of each city, and the board of trustees of each incorporated town, respectively, to elect and to keep in office three school trustees, who constitute the school board of such city or town.

Section 4444, which has reference to township trustees as well as the trustees of cities and towns, provides that such trustees shall have charge of the educational affairs of their respective townships, towns and cities, and shall employ teachers and locate and establish a sufficient and convenient number of schools for the education of the children within their respective jurisdictions.

VOL. 111.—31

Section 4445 authorizes the school trustees of such incor-- porated towns and cities to employ a superintendent for their schools, " and to prescribe his duties, and to direct in the discharge of the same."

Construing these general statutory provisions in connection with the incidental powers of corporations to which we have referred, this court has frequently, either expressly or impliedly, held that the various school boards and other educational authorities of the State have the power to adopt appropriate rules and regulations for the government of the schools under their control, and that when so adopted such rules and regulations are analogous to by-laws and ordinances, and are tested by the same general principles. *Danenhoffer* v. *State*, 69 Ind. 295 (35 Am. R. 216); *State, ex rel.,* v. *White, supra; State, ex rel.,* v. *Webber,* 108 Ind. 31 (58 Am. R. 30).

The accepted doctrine is, that the general power to take charge of the educational affairs of a district or prescribed territory includes the power to make all reasonable rules and regulations for the discipline, government and management of the schools within the district or territory. *Thompson* v. *Beaver,* 63 Ill. 353; *Roberts* v. *City of Boston,* 5 Cush. 198; *Sherman* v. *Charlestown,* 8 Cush. 160; *People* v. *Medical Society,* 24 Barb. 570; *Spiller* v. *Woburn,* 12 Allen, 127; *Hodgkins* v. *Rockport,* 105 Mass. 475; *State* v. *Burton,* 45 Wis. 150 (30 Am. R. 706); *Ferriter* v. *Tyler,* 48 Vt. 444 (21 Am. R. 133).

But this does not imply that all the rules, orders and regulations for the discipline, government and management of the schools shall be made a matter of record by the school board, or that every act, order or direction affecting the conduct of such schools shall be authorized or confirmed by a formal vote. No system of rules, however carefully prepared, can provide for every emergency, or meet every requirement. In consequence, much must necessarily be left to the individual members of the school boards, and to the

superintendents of, and the teachers in, the several schools. *Russell* v. *Lynnfield*, 116 Mass. 365.

It follows that any reasonable rule adopted by a superintendent, or a teacher merely, not inconsistent with some statute or some other rule prescribed by higher authority, is binding upon the pupils.

In the present case, the rule requiring the appellant to visit weekly all the schools under his charge and to see that the best methods of instruction were adopted, and which was read in evidence, necessarily conferred upon him authority, if authority had otherwise been wanting, to order and promulgate such additional rules as the best interests of the schools might seem to require, within the limits to which all such rules may extend.

As applicable to the structure and situation of the school-building which the appellee attended, and to the purposes designed to be accomplished by it, the rule requiring tardy pupils to remain either in the hall or in the principal's office until the opening exercises were over, was a reasonable rule, and one to which, as an abstract regulation, no serious objection can be urged.

Tardiness is a recognized offence against the good order and proper management of all schools. *Burdick* v. *Babcock*, 31 Iowa, 562. A tardy pupil ought not, therefore, to complain of some inconvenience or annoyance at having to remain in some other part of the building for the short period of time required to complete the opening exercises. But the manner of enforcing such a rule may, as in this case, cause a very different question to be presented. 2 Dillon Munic. Corp., section 950.

In the enforcement of all rules for the government of a school, due regard must be had to the health, comfort, age and mental as well as physical condition of the pupils, and to the circumstances attending each particular emergency.

More care ought to be observed in looking after the comfort of pupils, and especially those of tender age, in ex-

tremely cold weather than when the atmosphere is nearer a mean temperature.   Pupils known to have some mental or physical infirmity may require some relaxation in the strict enforcement of such rules as against them.

No rule, however reasonable it may be in its general application, ought to be enforced when to enforce it will inflict actual and unnecessary suffering upon a pupil.   Rules are often adopted inflicting a penalty for absence from school without proper or some prescribed leave, and rules of that class have always, so far as our information extends, been held to be reasonable and sometimes necessary school regulations, and yet such rules could not be lawfully enforced against a pupil detained from school by sickness, a violent storm, a death in the family, or any physical disability to attend.

A school regulation must, therefore, be not only reasonable in itself, but its enforcement must also be reasonable in the light of existing circumstances.   The habit of locking the doors of the school-room during the opening exercises observed by the appellee's teacher was not an unreasonable enforcement of the rule under consideration, in moderate weather and under ordinary circumstances.   But to lock the doors on an extremely and unusually cold morning, without causing special care and attention to be given to the comfort of such pupils as might thereby be required to remain in some other part of the building, was undoubtedly both an unreasonable and a negligent, and hence an improper enforcement of the rule.

With these general principles in view, neither one of the instructions hereinabove set out can be sustained.   They both utterly confounded the reasonableness of the rule to which they evidently referred as an abstract and general regulation, with its improper and unreasonable enforcement, and in effect submitted to the jury the reasonableness of the rule as a hypothetic question, dependent upon the existence or non-existence of certain enumerated facts.   In other words, they

both made the question of the validity of the rule one of mixed law and fact to be determined by the jury, instead of a question of law, as it really was, for the decision of the court.

The court also instructed the jury to the effect that if the appellee was at any time detained in the school-room for a period of ten or fifteen minutes after her class was dismissed, as a penalty for having asked leave to retire and having retired from the room during school hours, such detention was a false imprisonment, and that a teacher who might refuse to permit a pupil to retire from the school-room, in accordance with the rule set out in the third paragraph of the complaint, would be liable for whatever damages thereby resulted to the pupil.

In our view of the principles underlying this case, that instruction was also erroneous. Such a detention after the rest of the class was dismissed may have been unjust, in the particular instance, as well as in a general sense, to the appellee, and it, as well as the refusal of permission to retire, may have been a violation of the spirit of the rule referred to; but, upon the hypothesis stated in the instruction, the detention did not amount to a false imprisonment, and the refusal of permission to retire did not constitute a cause of action against the teacher.

The recognized doctrine now is, that a school officer is not personally liable for a mere mistake of judgment in the government of his school. To make him so liable it must be shown that he acted in the matter complained of wantonly, wilfully or maliciously. *Cooper* v. *McJunkin*, 4 Ind. 290; *Gardner* v. *State*, 4 Ind. 632; *Danenhoffer* v. *State*, 79 Ind. 75: *Elmore* v. *Overton*, 104 Ind. 548 (54 Am. R. 343); *Churchill* v. *Fewkes*, 13 Bradw. 520; *McCormick* v. *Burt*, 95 Ill. 263 (35 Am. R. 163); *Harman* v. *Tappenden*, 1 East, 555; *Dritt* v. *Snodgrass*, 66 Mo. 286 (27 Am. R. 343).

The instruction consequently fell short of telling the jury all that was necessary to establish a liability for either the detention or the refusal referred to by it.

Fertich v. Michener.

The detention or *keeping in* of pupils for a short time after the rest of the class has been dismissed, or the school has closed, as a penalty for some misconduct, shortcoming or mere omission, has been very generally adopted by the schools, especially those of the lower grade, and it is now one of the recognized methods of enforcing discipline and promoting the progress of the pupils in the common schools of the State. It is a mild and non-aggressive method of imposing a penalty, and inflicts no disgrace upon the pupil. The additional time thus spent in studying his lessons presumably inures to the benefit of the pupil. However mistaken a teacher may be as to the justice or propriety of imposing such a penalty at any particular time, it has none of the elements of false imprisonment about it, unless imposed from wanton, wilful or malicious motives. In the absence of such motives, such a mistake amounts only to an error of judgment in an attempt to enforce discipline in the school, for which, as has been stated, an action will not lie. And in this connection it is perhaps proper to say that there is nothing in the evidence, as we construe it, tending to show that the appellee's teacher was actuated by wantonness, wilfulness or malice in any of the alleged wrongs of which the appellee has complained. As there was a failure of proof as against the teacher, the necessary inference is that the evidence was insufficient to establish a cause of action against the appellant. As to what constitutes a reasonable rule for the government of a school, see the case of *Burdick* v. *Babcock*, 31 Iowa, 562, above cited.

The judgment is reversed, with costs.

Filed April 28, 1887.

## ON PETITION FOR A REHEARING.

NIBLACK, J.—Rule 24 of this court provides that a "rehearing must be applied for by petition in writing, setting forth the cause for which the judgment is supposed to be erroneous." As applicable to that rule, see the cases of

*Goodwin* v. *Goodwin*, 48 Ind. 584, and *Western Union Tel. Co.* v. *Hamilton*, 50 Ind. 181.

The petition in this case fails to specify the particular causes, or any particular cause, on account of which the opinion heretofore announced is supposed to be erroneous, and hence does not comply with the rule in regard to rehearings above stated. An elaborate brief has, however, been filed in support of the petition, and as the case is, in many respects, one of public interest, we will nevertheless briefly consider some of the argumentative causes for a rehearing assigned by the brief.

- It is claimed that the constructions we placed respectively upon the sixth and eighth instructions given by the circuit court are erroneous, because there is nothing either in the textbooks, or in any of the previously decided cases, which sustains the distinction recognized by us between the reasonableness of a rule adopted for the government of a public school and the unreasonable or improper enforcement of such a rule. This claim is based upon the alleged ground that such a rule to be valid must have a uniform and humane operation upon all alike, and must be of a character to restrain all school officers from inflicting cruelty or injustice on the one side, or from granting special indulgences to particular pupils on the other side, under its authority. We agree that such a school regulation must be operative on all alike; but by that is meant that it must apply to all alike under the same circumstances, that is, to all similarly situated. It is only in this sense that the most sweeping provisions of a statute can be made to have a uniform application. We have a statute which makes railroad companies liable for stock killed at places on their roads which are not securely fenced, and yet we have uniformly held that the provisions of that statute do not apply to places at which public policy does not permit fences to be erected. Under the strict letter of the statute, the deliberate and intentional killing of one person by another is murder, and

yet, however deliberately and intentionally one may kill another in battle, the former stands excused by the unwritten, but higher, law of war.   We might give many other illustrations of the flexibility of general as well as of positive statutes.

One of the most thoroughly established rules in the government of a school permits a teacher to punish a pupil for a violation of good order and necessary discipline, and the reasonableness of such a rule, as an abstract proposition, has never, as we are aware, been seriously questioned ; but the nature and extent of the punishment which may be thus inflicted have always been made to depend upon the circumstances of each particular case.   Cruel or excessive punishment has ever been construed to be both an unreasonable and an improper enforcement of this long established rule.

That abuses may be practiced in the pretended enforcement of a rule adopted for the government of a school, affords no argument against the reasonableness of the rule, having reference to the legitimate purposes for which it was adopted.

The distinction between the reasonableness of a school regulation, general in its character, and its negligent or improper enforcement, which we have attempted to define, however novel in form, is nothing more than a logical deduction from the general principles firmly and continuously recognized in the government of schools, and especially public schools.   This view is amply sustained by the illustrations we have already given.

In answer to criticisms made upon our construction of some parts of the evidence, we need only state, in general terms, that we might well have contented ourselves with saying at the former hearing that, however much at fault the appellee's teacher may have been in regard to any of the matters complained of in the complaint, there was no evidence either showing, or fairly tending to show, that the appellant had any actionable connection with, or personal responsibility for, the mistakes or misconduct of the teacher touching such

matters.   Such was in effect our conclusion at the time, and nothing has been since adduced to change our conclusion in that respect; consequently, as the evidence did not make a case against the appellant, the appellee has no cause to complain of our view of the evidence in its abstract application to what may have occurred between her and her teacher.

Conceding our view of the evidence, in the respect last stated, to be erroneous, it does not affect the merits of the controversy between the appellant and the appellee.   But, considering the immunity which the law extends to a teacher who acts in good faith and is impelled by proper motives in the government of his school, we see no reason to change our formerly intimated, if not expressed, opinion that the evidence would not have sustained an action against the appellee's teacher if she, instead of the appellant, had been the defendant.

Other questions are discussed by counsel, but nothing is offered which throws any new light upon the cause as it was originally presented.

On the general subject here discussed, further reference is made to 25 Central Law Journal, 339.

The petition for a rehearing is overruled.

Filed Nov. 5, 1887.