JOHN B. STETSON UNIVERSITY AND LINCOLN HULLEY, *Plaintiffs in Error,* v. HELEN HUNT, *Defendant in Error.*

En Banc.

Opinion Filed December 20, 1924.

Petition for Rehearing Denied January 21, 1925.

1. Expulsion means to eject, banish or cut off from the privileges of an institution or society permanently.

2. A suspension is a temporary cutting off or debarring one from the privileges of an institution or society.

3. Malice in law is that condition of the mind which shows a heart regardless of social duty and fatally bent on mischief the existence of which is inferred from acts committed or words spoken. Malice is also defined as the intentional doing of a wrongful act toward another without legal justification or excuse, or, in other words, the wilful violation of a known right.

4. A private institution of learning may prescribe requirements for admission and rules for the conduct of its students and all who enter such institutions as students impliedly agree to conform to the rules of government. The only limit to this rule is as to institutions supported in whole or in part by appropriations from the public treasury. As to such institutions the rule is viewed more critically and is generally subject to legislative regulation.

5. As to mental training, moral and physical discipline and welfare of the public, college authorities stand in *loco parentis* and in their discretion may make any regulation for their government which a parent could make for the same purpose, and so long as such regulations do not violate divine or human law, courts have no more authority to interfere than they have to control the domestic discipline of a father in his family.

6. It is well settled that unless regulations or rules are unauthorized, against common right or palpably unreasonable, the courts will not annul or revise them. Neither will the courts afford relief in case of the enforcement thereof unless those whose duty it is to enforce them act arbitrarily and for fraudulent purposes.

7. The relation between a student and an institution of learning privately conducted and which receives no aid from the public treasury is solely contractual in character and there is an implied condition that the student knows and will conform to the rules and regulations of the institution and for breach of which he may be suspended or expelled.

8. In the school, as in the family, there exists on the part of the pupils the obligations of obedience to lawful commands, subordination, civil deportment, respect for the rights of other pupils, and fidelity to duty. These obligations are inherent in any proper school system, and constitute, so to speak, the common law of the school.

9. Under the law it is competent for the trustees or governing body of an institution of learning to vest in the President or Superintendent authority to enforce discipline and when acting lawfully in this capacity courts will not interfere.

10. It is proper to state in this connection that a mere mistake of judgment on the part of the school officer in governing his school either as to his duties under the law or as to facts submitted to him, does not make him liable, but it must be shown that he acted in the matter complained of wantonly, wilfully or maliciously.

11. Where the rules and regulations of a private institution of learning receiving no aid from the public treasury in effect provide that a student may forfeit his connection with the institution without any overt act if he is not in accord with its standards it is not incumbent on the institution to prefer charges and prove them at trial before dismissing permanently or temporarily a student regarded by it as undesirable.

12. In an action where malice is the gist of the offense every presumption must be indulged in favor of the school authorities to the extent that they acted in good faith, for the best interests of the school and the pupil as they saw it, and no recovery can be had for error of judgment, but may be had for error grounded on malice.

A Writ of Error to the Circuit Court for Orange County; C. O. Andrews, Judge.

Judgment reversed.

*Mabry, Reaves & Carlton, Egford Bly* and *Masseu & Warlow,* for Plaintiffs in Error.

*Davis & Giles, Baldwin & Vetter* and *Alex. St. Clair. Abrams,* for Defendant in Error.

TERRELL, J.—Helen Hunt sued John B. Stetson University, a corporation, and Lincoln Hulley, its president, in an action of tort. The declaration among other things alleging that she (Helen Hunt) was "maliciously, wantonly and without cause in bad faith expelled" from said University, and that such expulsion was confirmed, ratified and approved by its Board of Trustees.

The case was tried in Orlando on the 16th of May, 1922, all pleas except the general issue having been stricken or withdrawn. The trial resulted in a verdict and judgment against both defendants in favor of the plaintiff in the sum of $25,000.00. Motion for a new trial was denied and writ of error was taken to this court.

Defendants below contend that the plaintiff was suspended rather than expelled from the University. The catalog current at the time defined expulsion as "a final separation from the University," while it avers that "suspension separates the student temporarily from the University." These definitions are in harmony with Webster, who defines expulsion as ejecting, banishing or cutting off from the privileges of an institution or society permanently, and suspension as temporarily cutting off or debarring one from the privileges of an institution.

For the purpose of disposing of this case it is not material whether Miss Hunt was suspended or expelled, but to clarify the situation we have examined all the evidence on this point carefully and it shows that she was suspended rather than expelled.

17—Vol. 88.

Was the suspension of Miss Hunt malicious? Malice in law as defined by the authorities is that condition of the mind which shows a heart regardless of social duty and fatally bent on mischief the existence of which is inferred from acts committed or words spoken. Malice is also defined as the intentional doing of a wrongful act toward another without legal justification or excuse, or, in other words, the wilful violation of a known right.

The Supreme Court of the United States in Tinker v. Colwell, 193 U. S. 473, 24 Sup. Ct. Rep. 505, approved the famous definition of malice by Bayley, J., in Bromage v. Prosser, (4 Barn. & C. 247) whose remarks have become a classic in the law and are as follows: ''Malice, in com mon acceptation, means ill will against a person, but in its legal sense it means a wrongful act, done intentionally, without just cause or excuse. If I give a perfect stranger a blow likely to produce death, I do it *of malice,* because I do it *intentionally* and without just cause or excuse. If I maim cattle, without knowing whose they are, if I poison a fishery, without knowing the owner, I do it *of malice,* because it is a wrongful act, and done intentionally. If I am arraigned of felony, and wilfully stand mute I am said to do it *of malice,* because it is intentional and without just cause or excuse. And if I traduce a man, whether I know him or not and whether I intend to do him an injury or not, I apprehend the law considers it as done *of malice,* because it is wrongful and intentional. It equally works an injury, whether I meant to produce an injury or not.''

In the light of the law as thus defined how stands the charges against the defendants Dr. Hulley and John B. Stetson University? The evidence shows that Helen Hunt had been a student at the University for almost two years; that for some time immediately preceding her suspension

which took place April 6, 1907, numerous disorders took place in the girls' dormitory where Miss Hunt resided, some of which were described as hazing the normals, ringing cow bells and parading in the halls of the dormitory at forbidden hours, cutting the lights and such other events as were subversive of the discipline and rules of the University. Some of the witnesses spoke of these disorders as bordering on insurrection.

Consequent to such infractions of the rules Miss Hunt and several other students were summoned before Dr. Hulley and on being briefly interrogated Miss Hunt was commanded to go home that day, Miss Keeling was commanded to move from the dormitory and secure quarters down town and Miss Webster was told that she would be dealt with later. Miss Tiffany and Mr. Wilder had been previously suspended and Mr. Clayburg had been expelled. All these students were subsequently reinstated in the University except Miss Hunt who entered another reputable college in about two or three weeks, though she and her parents within such time were advised by Dr. Hulley that she would be expected to return to the University.

John B. Stetson University was incorporated under the name of DeLand University by virtue of the provisions of Chapter 3808 Acts of 1887, Laws of Florida. Its name was changed to the present designation by Chapter 3985 Acts of 1889, Laws of Florida. It is a private institution of learning, and the Act of incorporation fully empowers the trustees "to make rules for the general management of the affairs of the institution and for the regulation of the conduct of the students." They are further empowered to "make, adopt and from time to time alter any such constitution, rules, regulations and by-laws as their convenience may require, and are not inconsistent with the Constitution and laws of the United States or of this State."

These powers within their scope give the trustees of John B. Stetson large discretion though they are not unlike charter and corporate rights under which such institutions are generally conducted.

Having in mind such powers the courts have universally applied the rule that a private institution of learning may prescribe requirements for admission and rules for the conduct of its students and all who enter such institutions as students impliedly agree to conform to the rules of government. The only limit on this rule is as to institutions supported in whole or in part by appropriations from the public treasury. As to such institutions the rule is viewed more critically and is generally subject to legislative regulation. 11 C. J. 998; 7 Cyc. 288; Gott v. Berea College, 156 Ky. 376, 161 S. W. Rep. 204, 51 L. R. A. (N. S.) 17.

As to mental training, moral and physical discipline and welfare of the pupils, college authorities stand *in loco parentis* and in their discretion may make any regulation for their government which a parent could make for the same purpose, and so long as such regulations do not violate divine or human law, courts have no more authority to interfere than they have to control the domestic discipline of a father in his family. Gott v. Berea College, *supra*.

Pursuant to the provisions of law as above quoted the trustees of John B. Stetson University among others adopted the following regulations which were in effect at the time of Miss Hunt's suspension:

"Offensive habits that interfere with the comforts of others, or that retard the pupil's work, etc., are prohibited."

"The government and discipline of the University are administered by the President. University does not outline in detail either its requirements or its prohibitions.

Students are met on a plane of mutual regard and help-fulness and honor. The ideals of the University are those of modern civilization in its best sense. The conventions and proprieties of refined society obtain here. A student may forfeit his connection with the University without any overt act if he is not in accord with its standards.''

We think the trustees were fully authorized to adopt these regulations, that they are reasonable, and that it is well settled that unless such regulations or rules are un-authorized, against common right or palpably unreason-able, the courts will not annul or revise them. Neither will the courts afford relief in case of the enforcement thereof unless those whose duty it is to enforce them act arbitrar-ily and for fraudulent purposes. Kentucky Military Inst. v. Bramblet, 158 Ky. 205, 164 S. W. Rep. 808; Watson v. City of Cambridge, 157 Mass. 561, 32 N. E. Rep. 864; State ex rel. Stallard v. White, 82 Ind. 278; Kinzer v. Directors of Independent School Dist. of Marion, 129 Iowa 441, 105 N. W. Rep. 686, 6 Ann. Cas. 996.

The relation between a student and an institution of learning privately conducted and which receives no aid from the public treasury is solely contractual in character and there is an implied condition that the student knows and will conform to the rules and regulations of the insti-tution and for breach of which he may be suspended or expelled. Gott v. Berea College, supra; 11 C. J. 996, 997 and 998; Booker v. Grand Rapids Medical College, 156 Mich. 95, 120 N. W. Rep. 589, 24 L. R. A. (N. S.) 447; State ex rel. Burg v. Milwaukee Medical College, 128 Wis. 7, 106 N. W. Rep. 116; Barker v. Trustees of Bryn Mawr College, 278 Pa. St. 121, 122 Atl. Rep. 220; 24 R. C. L. 650.

Under the law it was competent for the trustees of John B. Stetson University to vest in the president authority to

enforce discipline, and when acting in this capacity the court in Vermillion v. State *ex rel.* Englehardt, 78 Neb. 107, 110 N. W. Rep. 736, 15 Ann. Cas. 401, text 406, among other things said: "He stands for the time being *in loco parentis* to his pupils, and because of that relation he must necessarily exercise authority over them in many things concerning which the board may have remained silent. In the school, as in the family, there exists on the part of the pupils the obligations of obedience to lawful commands, subordination, civil deportment, respect for the rights of other pupils, and fidelity to duty. These obligations are inherent in any proper school system, and constitute, so to speak, the common law of the school. Every pupil is presumed to know this law, and is subject to it, whether it has or has not been re-enacted by the district board in the form of written rules and regulations. Indeed, it would seem impossible to frame rules which would cover all cases of insubordination and all acts of vicious tendency which the teacher is liable to encounter daily and hourly.

In Fertich v. Michener, 111 Ind. 472, 11 N. E. Rep. 605, 14 N. E. Rep. 68, 60 Am. Rep. 709, text 716, it was held that "all the rules, orders and regulations for the discipline, government and management of the schools shall be made of record by the school board, or that every act, order or direction affecting the conduct of such schools shall be authorized or confirmed by a formal vote. No system of rules however carefully prepared can provide for every emergency, or be left to the individual members of the school boards, and to the superintendents of, and the teachers in the several schools. Russell v. Lynnfield, 116 Mass. 365."

It is proper to state in this connection that a mere mistake of judgment on the part of a school officer in governing his school either as to his duties under the law or as to

facts submitted to him, does not make him liable, but it must be shown that he acted in the matter complained of wantonly, wilfully or maliciously. Any other rule would work a hardship to honest men who with the best of motives endeavor to perform the duties imposed in them. Fertich v. Michener, *supra,* and cases there cited.

It would very materially impair the discipline and usefulness of an institution of learning and would lead to vexatious litigation to hold that whenever a teacher sends a child home as a punishment for insubordinate conduct the child or the parent may treat it as an expulsion and sue the teacher or other governing authority. Davis v. City of Boston, 133 Mass. 103; Spear v. Cummings, 23 Pick. (Mass.) 224; Sherman v. Inhabitants of Charlestown, 8 Cush. (Mass.) 160; Hodgkins v. Rockport, 105 Mass. 475; Learock v. Putnam, 111 Mass. 499.

Where the rules and regulations of a private institution of learning receiving no aid from the public treastury in effect provide that a student may forfeit his connection with the institution without any overt act if he is not in accord with its standards it is not incumbent on the institution to prefer charges and prove them at trial before dismissing permanently or temporarily a student regarded by it as undesirable. The acceptance and enjoyment of the benefits afforded by such institution is necessarily conditioned upon that degree of good conduct on the part of each which is indispensable to the comfort and progress of others. Miller v. Clement, 205 Pa. 484, 55 Atl. Rep. 32; Vermillion v. State *ex rel.* Englehardt, *supra;* State v. Burton, 45 Wis. 150, 30 Am. Rep. 706; Barker v. Trustees of Bryn Mawr College, 278 Pa. St. 121, 122 Atl. Rep. 220; Board of Education v. Helston, 32 Ill. App. 300.

It was further in effect held in the last cited case that every pupil, when called upon by the superintendent or by

the board should as a matter of duty and loyalty to what is essential for the common welfare, freely state anything within his knowledge not self criminating, that will assist in bringing the offender to justice and thereby tend to the repression of all offenses. This is necessarily sound for barring parental control the power of school authorities over pupils extends to all acts detrimental to the best interests of the school whether committed during school hours or intermission. To hold otherwise would tend to paralyze discipline in every department of our school system.

Counsel on behalf of Miss Hunt contend that at the time of her suspension she was a mere child of fifteen or sixteen years of age, that she was a stranger without friends in DeLand, that she was forced out of the dormitory by Dr. Hulley, that he did not previously advise her parents of her suspension, that he made no inquiry as to her financial condition, that no provision was made to take care of her till she could notify her parents and no opportunity was given her to rebut the charges against her.

The record in this case shows that Miss Hunt was suspended by Dr. Hulley between 8:30 and 9 A. M., April 6, 1907, that in all matters pertaining to such suspension Dr. Hulley was firm and positive, but was in no wise actuated by malice, that she could have gone home about noon of that date, but that she staid at a private boarding house in DeLand that night where other pupils were boarding, and went home with her father the following day, that she and her family had friends in DeLand whom she was at liberty to go to for counsel and assistance at any time, and that within two or three weeks she entered and continued her studies in another reputable college though she was advised by Dr. Hulley in the meantime that she would be expected to return to John B. Stetson University.

In an action of this kind where malice is the gist of the offense every presumption must be indulged in favor of the school authorities to the extent that they acted in good faith, for the best interests of the school and the pupil as they saw it, and no recovery can be had for error of judgment, but may be had for error grounded on malice. 24 R. C. L. 651; Note 15 Ann. Cas. 407; McCormick v. Burt, 95 Ill. 263, 35 Am. Rep. 163; Kinzer v. Directors of Independent School Dist. of Marion, 129 Iowa 441, 105 N. W. Rep. 686, 6 Ann Cas. 996; Fertich v. Michener, 111 Ind. 472, 11 N. E. Rep. 605, 14 N. E. Rep. 68, 60 Am. Rep. 709.

We have examined all the evidence carefully and find nothing in the acts committed, words spoken or any other facts and circumstances connected with Miss Hunt's suspension that imputes malice as here defined on the part of either Dr. Hulley or Stetson University.

We have given due consideration to citations by defendant in error supporting the contention that she should have been awarded a hearing before being sent away from the University, but these are all dealing with cases from jurisdictions where statutes, by-laws or regulations are in effect requiring such hearings, but such is not the case here.

For reason announced in this opinion the judgment below is accordingly reversed.

TAYLOR, C. J., AND ELLIS, J., concur.

WEST, J., concurs in the conclusion.

WHITFIELD, J., dissents in part.

BROWNE, J., disqualified.