184 So.2d 701 (1966)
UNIVERSITY OF MIAMI, a Nonprofit Corporation, et al., Appellants,
v.
Robert J. MILITANA, Appellee.
No. 65-641.
District Court of Appeal of Florida. Third District.
March 31, 1966.
Rehearing Denied April 20, 1966.
*702 Mershon, Sawyer, Johnston, Dunwody & Cole and James E. Glass, Miami, for appellants.
Bernard B. Weksler, Salvatore G. Militana, Miami, for appellee.
Before PEARSON, CARROLL and BARKDULL, JJ.
PER CURIAM.
The appellant, University of Miami, was the respondent in the circuit court to a petition for mandamus. The petition of the appellee sought an order directing the University of Miami to promote the petitioner to the fourth year class of the School of Medicine and to enroll him during the ensuing school year. The trial judge entered an order awarding the peremptory writ in the terms described, and this appeal is from that judgment.
The petition in this cause was filed on August 26, 1964. Thereafter, the trial judge entered an order pendente lite requiring the respondents, who are the appellants here, to enroll the appellee in the Medical School as a fourth year student. This interlocutory order was reviewed by this Court in University of Miami v. Militana, Fla.App. 1964, 168 So.2d 88, in which we held that the order pendente lite requiring that the petitioner be admitted forthwith to the Medical School was without legal basis. We quashed the order. Subsequently, upon the entry of the order granting the peremptory writ, a notice of appeal was filed, and a motion requesting the circuit court to fix the amount, terms and conditions of a supersedeas bond was made in the circuit court. The motion for supersedeas was denied by the circuit court. Thereupon, the University moved, in this Court, for a review of the order denying the motion for supersedeas. Upon review we refused to change the order of the circuit court, and pursuant to the peremptory writ of mandamus, Mr. Militana has been enrolled in the University of Miami during the current (1965-66) academic year.
Militana was admitted to the University's School of Medicine in the fall of 1959. At the end of his first academic year, the Promotions Committee recommended that he be promoted to the second year on probation. After the second year, the Promotions Committee recommended that he be given the opportunity of repeating the second year. Militana repeated the second year and was promoted to the third year. At the conclusion of his third year, Militana had a cumulative grade point average of 1.92  a grade point average of 4.00 is equivalent to an "A". The Promotions Committee recommended that he be promoted to the fourth year on probation, subject to additional satisfactory work and re-examination in obstetrics-gynecology and pediatrics. During the summer of 1963 Militana successfully completed the required *703 work in pediatrics. He did not successfully complete the work in obstetrics and gynecology. At the conclusion of his work in the summer of 1963, the Executive Committee of the School of Medicine dismissed him for academic failure.
This action was instituted by Militana by complaint for specific performance, declaratory decree and other relief. Before a hearing on the University's motion to dismiss, Militana filed a motion to amend the complaint and filed an amended complaint or petition for writ of mandamus. The alternative writ was issued after the cause was transferred to law. The return and answer denied the material allegations of the petition and the alternative writ and asserted other defenses. After trial before the court, the peremptive writ was issued.
Before discussing the points presented by the appellant, we think it advisable to consider the following findings of fact contained in the order appealed.
"3. That the action of the Respondents, particularly the School of Medicine, in dropping the Petitioner from the School of Medicine was arbitrary, capricious, and without just cause, and without any hearing, notice, or opportunity to be heard of the cause of the Petitioner's dismissal from the School of Medicine. The Respondents did not act in good faith." [Emphasis supplied.]
A review of the record does not reveal any evidence upon which this finding of fact could have been based. In support of the finding, appellee urges only that the system employed by the University is inappropriate. Appellee labels the system "arbitrary". We find that this interpretation of the record, even if fully documented, would not be a basis for a finding of bad faith. Good faith is not an abstract quality. It has been defined as a "concrete quality, descriptive of the motivating purpose of one's act or conduct when challenged or called in question." Municipal Bond & Mortgage Corp. v. Bishop's Harbor Drainage Dist., 154 Fla. 246, 17 So.2d 226, 227, 228 (1944). The term "arbitrary" is defined in Black's Law Dictionary (4 ed. 1951) as follows:
"ARBITRARY. Means in an `arbitrary' manner, as fixed or done capriciously or at pleasure; without adequate determining principle; not founded in the nature of things; nonrational; not done or acting according to reason or judgment; depending on the will alone; absolutely in power; capriciously, tyrannical; despotic. * * * Without fair, solid, and substantial cause; that is, without cause based upon the law * * * not governed by any fixed rules or standard. * * *"
The term "arbitrary" is not synonymous with "bad faith" or "lack of good faith."
Appellants present three points. The first point urges that the acts coerced by the writ of mandamus are discretionary and, therefore, not subject to a writ of mandamus. The second point urges error in the refusal of the trial court to admit certain evidence. The third point urges that it is against public policy to require a university to promote a medical student whom the School of Medicine finds unqualified for promotion. We believe that this appeal must be disposed of upon the basis of the first point presented.
The bulletin or catalogue of the School of Medicine of the University of Miami for September 1959, under which the appellant entered that school, contains the following provision for promotion of medical students.[1]
"In general, a scholastic accomplishment of 1.0 (C average) is necessary for promotion from one year to the next, but promotion is finally determined by the Promotions Committee. In addition to the grade average, the Promotions Committee considers such qualities as attitude, industry, and general conduct in making its recommendations. This Committee may recommend promotion, *704 promotion on probation, repetition of a course or of a years' work, or dismissal. In case the Committee recommends the repetition of a year's work for a first year student, the student must be readmitted by the Admissions Board in competition with other applicants before he may repeat the work. Students promoted on probation shall have the conditions of probation described by the Promotions Committee and shall be so notified by the Office of the Dean."
The operation of a private college or university is touched with eleemosynary characteristics. Even though the public has a great interest in seeing these institutions encouraged and supported, they are operated as a private business. This being true, the college may set forth the terms under which it will admit and subsequently graduate students who subject themselves to the rules, regulations and regimen of the college. It is generally accepted that the terms and conditions for graduation are those offered by the publications of the college at the time of enrollment. As such, they have some of the characteristics of a contract between the parties, and are sometimes subject to civil remedies in courts of law. See John B. Stetson University v. Hunt, 88 Fla. 510, 102 So. 637 (1925); and cases collected at 50 A.L.R. 1497.
The provision quoted above clearly vests a discretionary power in the faculty of the School of Medicine as to the promotion of students. The provision is not against public policy because many years of experience have demonstrated the ability of the private colleges and universities of this Country to carry out their assumed task of educating their students. See e.g., Robinson v. University of Miami, Fla.App. 1958, 100 So.2d 442.
Having concluded that, under the private contract here sought to be accomplished, promotion from one class to another is clearly within the discretion of the faculty (Promotion Committee) of the School of Medicine at the University of Miami, we must hold that the peremptory writ was erroneously awarded because mandamus cannot be used to control an exercise of discretion. State ex rel. West Flagler Kennel Club, Inc. v. Florida State Racing Commission, Fla. 1954, 74 So.2d 691. See also cases collected at 6 A.L.R. 1533.
Appellee seeks to avoid this conclusion by proofs in the record and argument in this Court that the School of Medicine of the University of Miami is the recipient of funds from the public treasury of the United States and from the public treasury of the State of Florida for the education of the students therein enrolled. Even though the opinion in John B. Stetson University v. Hunt, 88 Fla. 510, 102 So. 637 (1925), indicates that a private institution may become subject to legislative regulation when it receives appropriations from the public treasury, the record before us will not support the appellee's conclusion that the public source of these funds has changed the character of the University or created any additional rights in the students. Nor do we find that the determinative principles of law are different for private and for public institutions and colleges. If the performance of an act or duty involves the exercise of discretion and no clear legal duty is shown, mandamus will not lie. State ex rel. Allen v. Rose, 123 Fla. 544, 167 So. 21 (1936). The nature of the institution does not change the rule. See cases collected at 39 A.L.R. 1019, and 86 A.L.R. 484.
By force of the trial court's judgment, which was not superseded on this appeal, the appellee has attended the medical school of the university as a fourth year student in this 1965-1966 session which is now drawing to a close. In so doing the appellee acted at his own risk, in the event the judgment he relied on should be reversed. This decision reversing the trial court's judgment leaves the university free to terminate appellee's student status in *705 the medical school, but does not require or compel such action by the university in the event the medical school, on reviewing his grades for the present year and other relevant considerations, should choose to retain and promote him as a medical student.
The order granting peremptory writ of mandamus is reversed.
NOTES
[1] Under the present system a 2.0 average is equivalent to a "C".