Emmett J. Schnepp, J.
Plaintiff, Richard Snitzel, through his mother Doris Snitzel, suing individually and on behalf of all other persons .similarly situated, instituted this action for a declaratory judgment and injunctive relief to declare invalid the school suspensions of plaintiffs and to restrain the defendants from interfering with their right to attend the public school from which they were suspended and for other relief. The action on behalf of plaintiff, Betty Hunt, was dismissed with prejudice.
Richard Snitzel was .suspended from the Charlotte Junior-Senior High School and later transferred to the Tutoring Center, a facility operated by the City School District. This center is challenged as being unauthorized, deficient in its educational program and noneducational services, and as organized for the sole purpose of segregating suspended pupils awaiting hearings to determine the need for further disciplinary action. It is further claimed that the transfer was invalid because of the failure to grant a prior hearing and obtain parental consent. In addition to a judicial declaration that section 3214 (subd. 3, par. c) of the Education Law requires the holding of a hearing within five days of the original suspension, and that the defendants have no jurisdiction to hold a suspension hearing or take further action on the same set of circumstances in the absence of .such a hearing, plaintiffs seek to compel the defendants to readmit these pupils to the public school from which they were suspended. Before the eourt is a motion for preliminary relief.
There is no authority for the maintenance of a class action on the factual situation before the eourt. The class is alleged to comprise students suspended from the Rochester City School District and .subsequently assigned to the Tutoring Center, who have not had suspension hearings prior to their transfers and who are presently prevented from attending the school from which they were .suspended. It is claimed that all have suffered identical wrongs.
In Gaynor v. Rockefeller (15 N Y 2d 120, 129), Chief Judge Field stated that ‘ a class action may not be maintained where the wrongs asserted are individual to the different persons involved and each of the persons aggrieved ‘ may determine for himself the remedy which he will seek ’ and may be subject to ‘ a *362 defense not available against others ’. (Society Milion Athena v. National Bank of Greece, 281 N. Y. 282, 292; see Brenner v. Title Guar. & Trust Co., 276 N. Y. 230, 236-237.) Separate ' wrongs to separate persons, though committed by similar means and even pursuant to a single plan, ’ we declared in the Society Milion Athena case (281 N. Y, at p. 292), ‘ do not alone create a common or general interest in those who are wronged.’ ”
Each student suspension is individual and different, and the circumstances relating to the type of conduct involved, and whether group or individual, must by its very nature vary in each case. A determination on the merits would necessarily turn on the partictilar facts and circumstances involved in each situation. As the court pointed out in Christman v. Skinner (38 A D 2d 884 [4th Dept.]), a class action, “ varying facts may present substantially different issues which do not lend themselves to anticipatory determination.”
Each alleged invalid transfer and the alleged lack of due process in each case are separate wrongs charged against the members of this class and each pupil is free ‘ ‘ to determine for himself the remedy for redress of his grievance ”. (Gaynor v. Rockefeller, 15 N Y 2d 120, 129, supra.) Defenses available to one are not necessarily available to others. Here, this might take the form of defending the charges at the hearing, which defenses may be based upon issues of identity or involvement, an appeal from an adverse decision to the Rochester Board, of Education and the Commissioner of Education of the State of New York, by -an informal conference with the principal upon the request of the pupil and parent, or by seeking relief from the courts. Each suspended student assigned to the center without a hearing may have something in common, but “ the tendency of the cases * * * is to restrict, rather than enlarge, the scope of class action. The real sanction accorded by this court to class suits has been in the closely associated relationships growing out of trust, partnership or joint venture, and ownership of corporate stock”. (Hall v. Coburn Corp. of Amer., 26 N Y 2d 396, 402.)
On the questions raised relating to the necessity of holding a hearing within five days of the suspension, section 3214 (subd. 3, par. c) of the Education Law provides, among' other things, as follows: “ No pupil may be suspended for a period in excess of five school days unless such pupil and the person in parental relation to such pupil shall have had an opportunity for a fair hearing, upon reasonable notice, at which such pupil shall have the right of representation by counsel, with the right to question *363 witnesses against such pnpil and to present witnesses and other evidence on his behalf.”
The language does not direct_that_a disciplinary hearing be held within five days from the suspension date, but .simply provides that the suspension may not continue beyond this period unless a hearing has been afforded. A suspension in excess of five days may be imposed only after the pupil and his parent shall have had an opportunity for a fair hearing. On the conclusion of this hearing a determination would then be made whether or not a suspension in excess of five days is warranted: The parent has the right of representation by counsel, with the right to question witnesses and submit evidence. Provision is made for the issuance of subpoenas, inferring a reasonable opportunity to investigate the facts and circumstances. Manifestly these procedures could seldom, if ever, be concluded and a fair hearing properly conducted within the five-day period.
The City School District claims that the suspension was terminated when the plaintiff was assigned to the Tutoring Center within five school days. The hearing to consider the suspension of this student beyond five days was scheduled for November 14, 1972. Based upon the record before the court it is held that notice of this hearing, which was given on November 9, 1972, was reasonable and within the authority of the district. The hearing was adjourned at plaintiff’s request, because of his mistaken reliance on the claim that no jurisdiction existed to hold a hearing after the expiration of five days. The hearing was finally conducted on November 30,1972 over the same objections of plaintiff and in his absence. The mere fact that the hearing was held more than five days after the first day of suspension does not render the hearing or the determination arrived at a nullity. Other questions relating to the validity of this hearing are not before the court.
On the challenges raised concerning the authorization of the Tutoring Center and the quality of education provided, it is pointed out that the school authority has the power to establish reasonable rules and regulations “ concerning the order and discipline of the schools * * * as they may deem necessary to secure the best educational results.” (Education Law, § 1709, subd. 2). To hold on this preliminary contested application that the center is unauthorized would restrict, without necessary proof, the ability of the school authorities to deal with pupils whose conduct may endanger the safety, morals, health or welfare of others. It would be a distortion of the educational *364 process to say that the school district must return plaintiff to the same school and classes from which he was suspended.
There are factual issues present based upon the conflicting affidavits as to the effective dates and circumstances surrounding the suspension, whether the suspension was terminated within the five-day period by transfer to the Tutoring Center, and the character of the center as related to the quality of its curriculum, the alleged lack of nonacademic services and the claimed denial of an equal educational opportunity to the students assigned there. The- granting of a preliminary injunction here would have the" same effect as the grant of the permanent relief . requested by the plaintiff, which should only be determined after a full hearing on the merits. On this motion for preliminary relief plaintiff must demonstrate a clear right to permanent injunctive relief. Thus it must appear clearly to the court that plaintiff’s contention is right 'and that there is a cause of action against the defendant which is ripe for determination. A sharp dispute exists here as to the material facts. From the record before the court it cannot be said that plaintiff has shown a reasonable probability of success and a clear right to the relief that is sought and the application for temporary relief is denied.
In the interest of justice the trial of this action should be preferred and a preference is ordered.