**Syed Joseph Sadek ALI, Plaintiff,**

v.

**STETSON UNIVERSITY, INC., Defendant.**

**No. 6:03–CV–975–ORl28.**

United States District Court,
M.D. Florida,
Orlando Division.

Oct. 8, 2004.

Thomas J. Pilacek, John C. Palmerini, Thomas J. Pilacek & Associates, Winter Springs, FL, for Plaintiff.

Mark G. Alexander, Holland & Knight LLP, Jacksonville, FL, for Defendant.

## ORDER

ANTOON, District Judge.

Plaintiff Syed Joseph Sadek Ali, through counsel, brings the instant action against Defendant Stetson University, Inc. ("Stetson") alleging breach of contract under the common law of the State of Florida and discrimination based upon race, ancestry, and ethnic characteristics in violation of 42 U.S.C. § 1981. Plaintiff claims that Stetson suspended and ultimately expelled him from school on the basis of his race, ancestry, and ethnic characteristics and that it breached its contract with him by failing to adhere to procedures contained in its campus life handbook. This cause is before the Court on Stetson's Motion for Summary Judgment. (Doc. 27, filed July 16,

2004).[1] Upon consideration of Stetson's motion, the record in this matter, and pertinent case law, the Court grants Stetson's motion on Plaintiff's claim under § 1981 and, pursuant to 28 U.S.C. § 1367(c)(3), declines to exercise supplemental jurisdiction over Plaintiff's breach of contract claim.

## I. Background

Unless otherwise indicated, the following facts are undisputed. Plaintiff, an Iranian–American male, attended Stetson from August 2000 until he was suspended on February 22, 2002. To date, Plaintiff has not resumed his studies at Stetson.

### A. Plaintiff's Interim Suspension

The incident that gave rise to Plaintiff's initial suspension occurred on September 2, 2001. Plaintiff and a friend, Alex Mansur, were driving on Daytona Beach when they were approached by an unspecified number of individuals riding all-terrain vehicles. Plaintiff exchanged words with one of the individuals, leading to an altercation which culminated in Plaintiff removing a handgun from underneath his seat. (Ali Dep., Doc. 27 Ex. 1 at 28–29). The individuals filed a complaint with the police and a felony warrant was issued for Plaintiff's arrest. On February 19, 2002, Plaintiff was arrested for aggravated assault with a firearm and held on $50,000 bond.

University administrators at Stetson subsequently received a report informing them of Plaintiff's arrest and the amount of his bond. On February 27, Stetson's Dean of Students, Michelle Espinosa, and Stetson's Vice President for Administration, Dr. James Beasley, placed Plaintiff on interim suspension pursuant to Articles II(B)[2] and III(E)[3] of Stetson's Code of

1. Stetson submitted a memorandum of law in support of its motion. (Doc. 27). Plaintiff filed a memorandum of law in opposition to the motion. (Doc. 35, filed July 30, 2004).

2. This article, entitled "Off–Campus Conduct," provides that Stetson may initiate its disciplinary process against a student if the "student is charged with an off-campus con-

Conduct and also charged him with violating Article II(C)(2)(a) of the code entitled "Threats and Endangerment." Dean Espinosa testified that she and Dr. Beasley decided to suspend Plaintiff because they would "not ... have a student on [their] campus who ... has been charged with aggravated assault with a deadly weapon [and who is being held] on $50,000 bond." (Espinosa Dep., Doc. 27 Ex. 5 at 61).

In March 2002, the state formally charged Plaintiff with the misdemeanor offense of improper exhibition of a weapon rather than with the felony offense for which he was arrested. (Ali Dep., Doc. 27 Ex. 1 at 79). Shortly thereafter, negotiations between Stetson and Plaintiff ensued. On March 26, 2002, Stetson presented Plaintiff with the first of two proposed agreements which would have allowed him to return to school and resume his studies. Plaintiff rejected the first proposed agreement because it included a provision requiring him to relinquish his concealed weapons permit. On April 26, 2002, Stetson responded by presenting Plaintiff with a second proposal which would have permitted him to retain his concealed weapons permit but required Plaintiff to agree that he would "never bring a weapon on campus." Plaintiff also rejected this proposal. (Ali Dep., Doc. 27 Ex. 1 at Ex. 4).

On May 13, 2002, the state *nolle prosequied* the misdemeanor charge against Plaintiff. Consequently, Stetson dropped its "Threats and Endangerment" charge against him.

### B. Plaintiff's Continued Suspension

Because Plaintiff refused to agree to refrain from bringing a weapon on campus, however, Stetson charged Plaintiff with violating three additional provisions of its Code of Conduct, including Article II(C)(1)(d) [4] ("Respect for the Laws") and Article II(C)(2)(c) [5] ("Respect for Others"). As a result, Plaintiff's suspension remained in effect following resolution of his criminal charge.

Plaintiff claims that the charges under Article II(C)(1)(d) and Article II(C)(2)(c) were based on what he considers to be a false allegation by Stetson that he admitted to carrying a gun on campus. (Doc. 35 at 4). Plaintiff has, however, admitted to carrying a gun on Stetson's campus on at least one occasion. (Ali Dep., Doc. 27 Ex. 1 at 108). Also, Stetson contends that its decision to continue Plaintiff's suspension was based, not on Plaintiff's admission of prior misconduct, but on his "continual refusal" to sign an agreement not to violate, as well as statements he made suggesting that he would not comply with, the university's code of conduct in the future. (Doc. 27 at 7-8).

An internal judicial hearing was scheduled for July 2, 2002 to resolve Stetson's outstanding charges against Plaintiff, but on June 28, 2002, Plaintiff requested that the hearing be postponed. On July 16, 2002, the hearing took place and Stetson's Administrative Judicial Board found that Plaintiff violated all the provisions under which he was charged. Accordingly,

duct violation of federal, state, or local laws" or "when a student's behavior off-campus interferes with the rights of others [or] reflects adversely on the University."

**3.** This article, entitled "Interim Suspension," provides that the Vice President for Administration may impose an interim suspension to, among other things, "ensure the safety and well-being of members of the University."

**4.** This article provides, in relevant part, that "weapons shall not be maintained on the University campus except as may be specifically authorized by the Director of Public Safety."

**5.** This article provides, in relevant part, that "non-compliance with the proper and lawful directions of University officials is prohibited."

Plaintiff was placed on disciplinary suspension, excluding him from the University until such time as he agreed to comply with all of Stetson's policies.

On August 6, 2002, Plaintiff filed an appeal of the Administrative Judicial Board's decision. (Doc. 1 Ex. M). Stetson's handbook provides that "[a] time and place for an appeal hearing shall be set as soon as practical" and that "[i]f the Board is unable to meet during the semester in which the alleged offense occurred, the appeal hearing shall take place no later than the fifth day of class the next semester." [6] (Doc. 27 Ex. B at 76). The University Appellate Board heard Plaintiff's appeal on April 8, 2003 and issued its decision upholding Plaintiff's disciplinary suspension on April 21, 2003. (Doc. 35 at 8).

### C. Plaintiff's Grievance

On February 27, 2002, five days after his initial suspension, Plaintiff filed a grievance with the university against Dean Espinosa. (Doc. 1 Ex. B). Plaintiff complained, among other things, that Espinosa failed to speak to Alex Mansur about the events leading to Plaintiff's arrest on September 2, 2001. Plaintiff also complained that, since he had not been charged with a crime, Stetson was not authorized to suspend him. (Doc. 1 Ex. B at 2; Doc. 35 at 6). According to Stetson's handbook, the University Grievance Council is responsible for investigating complaints and for issuing a "written report of [its] . . . investigation . . . within 30 days of receiving the complaint." (Doc. 35 Ex. B at 55). On April 8, 2002, Plaintiff filed another grievance against Stetson for failure to respond to his initial complaint within 30 days after it was filed. (Doc. 1 Ex. E; Doc. 35 at 6). The Grievance Council issued its report regarding Plaintiff's first grievance on

May 20, 2002, more than 80 days after it was filed. (Doc. 35 at 6).

Plaintiff appealed the Grievance Council's decision on June 7, 2002. (Doc. 35 at 7). According to Stetson's handbook, a hearing with the Staff Grievance Committee, which reviews the Grievance Council's findings, should be convened within 30 days of the request. (Doc. 35 Ex. B at 57). Plaintiff's hearing was convened on September 4, 2002, nearly three months after his request. (Doc. 35 at 7).

### II. Summary Judgment Standards

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party bears the burden of establishing that no genuine issues of material fact remain. *Celotex v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

In ruling on a motion for summary judgment, the Court construes the facts and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). However, summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322, 106 S.Ct. 2548. "[A]t the summary judgment stage, the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a

---

**6.** August 21, 2002 marked the beginning of Stetson's Fall 2002 semester. The fifth day of class was August 27, 2002.

genuine issue for trial." *Anderson,* 477 U.S. at 249, 106 S.Ct. 2505.

When faced with a "properly supported motion for summary judgment, [the non-moving party] must come forward with specific factual evidence, presenting more than mere allegations." *Gargiulo v. G.M. Sales, Inc.,* 131 F.3d 995, 999 (11th Cir. 1997). "The evidence presented cannot consist of conclusory allegations or legal conclusions." *Avirgan v. Hull,* 932 F.2d 1572, 1577 (11th Cir.1991); *see also* Fed. R.Civ.P. 56(e) (providing that the nonmovant's response "must set forth specific facts showing that there is a genuine issue for trial").

### III. The Merits of Defendant's Motion

### A. Plaintiff's Claim Under § 1981

Plaintiff claims that Stetson discriminated against him in violation of § 1981 both when it placed him on interim suspension following his arrest and when it acted to continue his suspension after the criminal charge against him was resolved. Section 1981 provides that:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, liens, and exactions of every kind, and to no other.

A claim alleging a deprivation of one or more of the rights enumerated under § 1981 can be based only on intentional discrimination. *Gen. Bldg. Contractors Ass'n v. Pa.,* 458 U.S. 375, 391, 102 S.Ct. 3141, 73 L.Ed.2d 835 (1982). Intentional discrimination may be proven either through direct or circumstantial evidence. *EEOC v. Joe's Stone Crab, Inc.,* 220 F.3d 1263, 1286 (11th Cir.2000) (explaining the "two theories of intentional discrimination under Title VII"); *Ferrill v. Parker Group, Inc.,* 168 F.3d 468, 472 (11th Cir. 1999) ("The test for intentional discrimination in suits under § 1981 is the same as the formulation used in Title VII discriminatory treatment cases."). Plaintiff argues that his claim under § 1981 is sufficiently supported by both direct and circumstantial evidence.

### 1. Direct Evidence

■ Direct evidence of discrimination is "evidence which, if believed, would prove the existence of a fact without inference or presumption." *Carter v. City of Miami,* 870 F.2d 578, 581–82 (11th Cir.1989). It is "composed of only the most blatant remarks, whose intent could be nothing other than to discriminate." *Id.* at 582. For such remarks "to constitute direct evidence of discrimination, they must be made by a person involved in the challenged decision." *Bass v. Bd. of County Comm'rs,* 256 F.3d 1095, 1105 (11th Cir. 2001) (quoting *Trotter v. Bd. of Trs.,* 91 F.3d 1449, 1453–54 (11th Cir.1996)).

■ Plaintiff claims that, during his grievance hearing, his mother asked members of Stetson's appeals board if Plaintiff was suspended "because of his name," that is, Plaintiff's Iranian ethnicity. (Doc. 35 at 9). According to Plaintiff, the board, which included Dean Espinosa, did not answer his mother's allegation. (Doc. 35 at 9). Plaintiff argues that the failure of the board, and particularly of Espinosa,[7] to respond "can be seen as an admission of race discrimination" and thus as direct evi-

---

**7.** Since Dean Espinosa made the initial decision to suspend Plaintiff, her failure to answer, assuming it constituted direct evidence of discrimination, would satisfy the require-
ment that the "remark"-or, in this case, the failure to remark-come from "a person involved in the challenged decision."

dence of discrimination. (Doc. 35 at 10) (citing *Martinez v. U.S.*, 295 F.2d 426, 429 (10th Cir.1961)).

Even if such a failure to respond "can be seen as an admission of race discrimination," it is nevertheless not direct evidence. To say that the board's silence "*can* be seen" as reflecting an intent to discriminate necessarily implies that it may also be seen otherwise. For example, the board's failure to respond might be seen instead as reflecting its offense at the insinuation that its actions were discriminatory. Whatever might have been behind the board's silence, it is not in the nature of a remark "whose intent could be *nothing* other than to discriminate." *Carter*, 870 F.2d at 581–82. Rather, it is only by inference that one could conclude that the board's failure to respond indicated its assent to the question asked of it. Thus, Plaintiff's direct evidence argument fails.

### 2. Circumstantial Evidence

"In evaluating motions for summary judgment regarding discrimination claims where a plaintiff has no direct evidence of discrimination, courts generally use the burden-shifting scheme set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)." *Benton v. Cous-*

*ins Props.*, 230 F.Supp.2d 1351, 1369 (N.D.Ga.2002), *aff'd*, 97 Fed. Appx. 904 (11th Cir.2004). Under the *McDonnell* framework, "a plaintiff must first establish a prima facie case of discrimination." *Farley v. Nationwide Mut. Ins. Co.*, 197 F.3d 1322, 1333 (11th Cir.1999). To establish a prima facie case under § 1981, a plaintiff must show: "(1) that she [or he] is a member of a protected class; (2) that the allegedly discriminatory conduct concerned one or more of the activities enumerated in the statute; i.e., the making, performance, modification, or termination of contracts, or the enjoyment of all the benefits, privileges, terms, and conditions of the contractual relationship; and (3) that the defendants treated the plaintiff less favorably with regard to the allegedly discriminatory act than other similarly situated persons who were outside plaintiff's protected class." [8] *Benton*, 230 F.Supp.2d at 1370.

Once the plaintiff establishes a prima facie case, thereby permitting an inference of discrimination, the defendant must then "articulate some legitimate, nondiscriminatory reason" for its action. *McDonnell*, 411 U.S. at 802, 93 S.Ct. 1817. If the defendant does so, the plaintiff, to survive summary judgment, must then present sufficient evidence to create a genuine issue of material fact regarding whether the

---

**8.** This test deviates slightly from "a traditional application" of the *McDonnell* test, *Benton*, 230 F.Supp.2d at 1370 n. 13, and also differs from the test proffered by the parties in this case. (Doc. 27 at 15; Doc. 35 at 10). Plaintiff and Defendant, relying on *Rutstein v. Avis Rent–A–Car Sys., Inc.*, 211 F.3d 1228, 1235 (11th Cir.2000), state that a plaintiff makes out a prima facie case under § 1981 by showing that: 1) he or she is a racial minority; 2) the defendant had an intent to discriminate on the basis of race; and 3) the discrimination concerned one or more of the enumerated activities in the statute. The flaw in this test is that, "by requiring proof of discriminatory intent [under the second element], [it] collapses the requirements for proving a Sec-

tion 1981 claim with the requirements for only a prima facie case." 230 F.Supp.2d at 1370 n. 14 (citing *Christian v. Wal–Mart Stores, Inc.*, 252 F.3d 862, 872 (6th Cir.2001)). As the *Benton* court explained, the second element in the test set forth in *Rutstein* was crafted to distinguish between a " 'Teamsters ' class action case and a '*McDonnell Douglas* ' type of disparate treatment case." 230 F.Supp.2d at 1370 n. 12. Like *Benton*, this case is not a class action, and there is, therefore, no reason to depart from a long line of authority and adopt a test that essentially negates the prima facie stage of the *McDonnell* test for § 1981 actions. *See id.* (citing *Patterson v. McLean*, 491 U.S. 164, 186, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989)).

defendant's reason is merely a pretext for discrimination. *Chapman v. Al Transp.*, 229 F.3d 1012, 1025 (11th Cir.2000). "Because the plaintiff bears the burden of establishing pretext ... he must present 'significantly probative' evidence on the issue to avoid summary judgment." *Young v. General Foods Corp.*, 840 F.2d 825, 829 (11th Cir.1988) (citation omitted). Plaintiff's "[c]onclusory allegations of discrimination, without more, are not sufficient to raise an inference of pretext or intentional discrimination where [a defendant] has offered extensive evidence of legitimate, non-discriminatory reasons for its actions." *Id.* at 830 (quoting *Grigsby v. Reynolds Metals Co.*, 821 F.2d 590, 597 (11th Cir. 1987)).

Stetson argues that Plaintiff fails to establish a prima facie case of discrimination. The Court agrees and further concludes that, even if Plaintiff successfully established a prima facie case, he nonetheless fails to provide sufficient evidence to permit a reasonable factfinder to determine that Stetson's reason is a pretext for discrimination.

### a. Plaintiff's Prima Facie Case

For the purpose of its motion, Stetson concedes the first and second elements of Plaintiff's prima facie case. Stetson ar-

gues, however, that Plaintiff fails to satisfy the third element.[9] To satisfy the third element of his prima facie case, Plaintiff must show that Stetson treated him differently than a "similarly situated" student outside of his protected class. *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir.1997). A "similarly situated" student, or "comparator," in this case is one who is similar to Plaintiff "in all relevant respects." *Id.*

Plaintiff identifies sixteen individuals not of the Iranian–American race as comparators. (Doc. 35 at 12–17). All of the comparators were students whom Stetson disciplined for offenses violating its code of conduct. In comparing their conduct to that of Plaintiff, the basis for Plaintiff's interim suspension and the basis for his continued suspension must be addressed separately.

■ Regarding Plaintiff's interim suspension, Stetson asserts that it based its decision primarily on two factors. The first was Plaintiff's arrest for a felony firearm offense that allegedly involved the threat of violence. The second was the amount of his bond. Of the sixteen comparators Plaintiff proffers, he does not identify anyone who was arrested for a firearm or weapons offense, much less for a felony firearm offense that involved a threat of violence.[10] (Doc. 35 at 12–18).

---

**9.** Under *Rutstein,* Defendant actually argues that Plaintiff fails to satisfy the second element: however, under the test employed by this Court, it is the third element that is at issue. *See* note 7, *supra.*

**10.** Of the comparators whose offenses involved weapons, one student was found possessing a knife and a sword in his dormitory room; one student possessed a BB gun in his dormitory room; one student was found possessing a dart blowgun in his room; one student was found possessing a pellet gun on his person and another student was found possessing the same in his dormitory room; one student was found possessing various guns and ammunition in his dormitory room (it is disputed whether the weapons were

paintball guns or ordinary firearms); two of the students were found possessing weapons used for hunting in their dormitory rooms; and four of the students were disciplined for incidents involving firecrackers. (Doc. 35 at 15–18).

Another student was found by a Stetson public safety officer possessing a firearm in his vehicle after allegedly physically assaulting another Stetson student. (Doc. 35 at 14–15). Plaintiff did not indicate that this student was arrested, and although he allegedly committed a violent act, the student did not commit the act with the use of a firearm. The firearm was found on the student only after he "ran" from the scene where his alleged act

He also fails to identify a single comparator who was both arrested and held on bond for his or her offense.[11] (Doc. 12–18). Because Stetson based its decision on the very two factors which distinguish Plaintiff from the comparators he proffers, they are clearly not "similarly situated [to him] in all relevant respects." Plaintiff, therefore, fails to make out a prima facie case that Stetson unlawfully discriminated against him by placing him on interim suspension.

Regarding the continuation of Plaintiff's suspension following the resolution of his criminal case, the asserted basis for Stetson's decision was Plaintiff's Insistence on a right to bring his gun onto campus. Because none of the comparators that Plaintiff proffers insisted on such a right, he also fails to make a out a prima facie case with respect to his continued suspension.

### b. Plaintiff's Evidence of Pretext

■ Even assuming that Plaintiff has made out a prima facie case of discrimination, Stetson has asserted a legitimate, non-discriminatory reason for its actions. Stetson claims that it placed Plaintiff on interim suspension and later continued his suspension because Plaintiff posed an exceptional threat to the university. The burden, therefore, shifts to Plaintiff to raise a genuine issue of material fact regarding whether Stetson's reason is merely a pretext for unlawful discrimination. The Plaintiff has failed to satisfy this burden.

Plaintiff's claim that Stetson's proffered reason is pretextual rests, in essence, on two arguments.[12] First, Plaintiff contends

that, by neglecting to interview Alex Mansur and other witnesses to the circumstances surrounding his arrest, Stetson failed to adequately investigate his case. However, given the function of interim suspension at Stetson, it is not at all clear how such failure evidences discrimination. Interim suspension is not a punishment that university administrators impose once they gather and consider all the facts surrounding an alleged offense. Rather, it is reserved for cases in which the accused student's alleged offense is so severe that suspension is warranted *prior to* an investigation and judicial hearing. Thus, by suspending Plaintiff shortly after learning of his arrest, Stetson was acting in accordance with the function of interim suspension. Moreover, the record evidence overwhelmingly suggests that, rather than using interim suspension as a means to discriminate against Plaintiff, Stetson sought to end his suspension as soon as it had cause to believe that he was not a serious threat. Indeed, almost immediately following the state's decision to charge Plaintiff with a misdemeanor rather than a felony offense, Stetson initiated negotiations with Plaintiff to allow for his return to the university.

Second, Plaintiff argues that Stetson agreed to allow him to return school if the state charged him with a misdemeanor rather than a felony offense but reneged on that agreement by requiring him to relinquish his weapons permit as a condition on his return. Though he fails to explain how this fact is probative of discrimination, Plaintiff's contention presum-

---

of violence was said to have occurred. (Doc. 35 at 14–15).

**11.** This student was arrested for aggravated and simple battery following an altercation in which he punched two Stetson students. There was no weapon involved. (Doc. 35 at 12–13).

**12.** In addition to these two arguments, Plaintiff also reasserts the arguments he made in support of his prima facie case. Without more, these arguments fail to create a genuine issue as to pretext much as they failed to establish that Plaintiff was treated differently than other similarly situated students.

ably is that Stetson imposed the condition simply as a means of prolonging his suspension. However, soon after Plaintiff objected to the condition, Stetson proposed a second agreement for his return without the condition that he forfeit his weapons permit. In the second proposed agreement, the only condition on Plaintiff's return was that he agree to abide by the university's code of conduct. To acquiesce to Plaintiff's objection and then require only that he abide by a code of conduct to which all of its students are bound plainly suggests that Stetson sincerely sought to negotiate Plaintiff's return to the university. Thus, whatever limited probative value Plaintiff's contention might otherwise have is lost when considered in the context of Stetson's overall efforts to negotiate an end to his suspension. Plaintiff has, therefore, failed to provide "significant probative evidence" of pretext sufficient to create a genuine issue of material fact for trial.

### B. Plaintiff's Breach of Contract Claim

The doctrine of supplemental jurisdiction is "now ... codified in 28 U.S.C. § 1367." *Palmer v. Hosp. Auth. of Randolph County*, 22 F.3d 1559, 1562 n. 3 (11th Cir.1994). It provides that a district court "may decline to exercise supplemental jurisdiction over a claim [if] the ... court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Having rejected Plaintiff's claim under § 1981, the basis for this Court's original jurisdiction no longer remains. The Court must therefore determine whether to exercise supplemental jurisdiction over Plaintiff's breach of contract claim.

■ "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n. 7, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988). In this case, the interest of comity, in particular, weighs heavily in favor of declining supplemental jurisdiction.

Plaintiff's contractual claim is a unique one, based not on an express contract but an implied-in-fact contract that is, to some extent, informed by the provisions of Stetson's student handbook. *Sharick v. Southeastern Univ. of the Health Sciences, Inc.*, 780 So.2d 136, 138 (Fla. 3d DCA 2000) ("The relation between a student and an institution of learning privately conducted, and which receives no aid from the public treasury, is solely contractual in character.") (quoting *John B. Stetson Univ. v. Hunt*, 88 Fla. 510, 517, 102 So. 637 (1924)); *see also Univ. of Miami v. Militana*, 184 So.2d 701, 704 ("it is generally accepted that the terms and conditions for graduation are those offered by the publications of the college at the time of enrollment. As such, they have some of the characteristics of a contract between the parties, and are sometimes subject to civil remedies in courts of law."). Courts in the various states differ on the degree to which a university or one of its students may depart from the provisions of a handbook before breaching a contract or, more generally, on how rigidly contract principles ought to apply to the student-university relationship. *See, e.g., Sharick*, 780 So.2d 136; *Boehm v. Univ. Of Penn. School of Veterinary Med.*, 392 Pa.Super. 502, 573 A.2d 575, 578 (Pa.Super.1990); *Napolitano v. Trustees of Princeton Univ.*, 186 N.J.Super. 548, 453 A.2d 263 (1982); *Harvey v. Palmer College of Chiropractic*, 363 N.W.2d 443 (Iowa Ct.App.1984); *Hunt*

*v. Wilson,* 72 Misc.2d 360, 339 N.Y.S.2d 287 (1972).

Given the uncertainty that inheres in this area of law, the principle of comity counsels this Court to decline supplemental jurisdiction. That this decision may cause some inconvenience to the parties in this case is outweighed by the need to have a unique issue of state law resolved in state court. Plaintiff "faces no time-bar threat resulting from dismissal of his state claims; by virtue of the 'savings' provision embodied in § 1367(d), he is free to refile [his] claim[ ] in state court within 30 days (unless Florida law provides for a longer period)." *Jacoboni v. KPMG L.L.P.,* 314 F.Supp.2d 1172 (M.D.Fla.2004).

### IV.  Conclusion

For the foregoing reasons, Stetson's Motion for Summary Judgment on Plaintiff's claim under § 1981 is **GRANTED**, and Plaintiff's breach of contract claim is **DISMISSED WITHOUT PREJUDICE** pursuant to the Court's authority under 28 U.S.C. § 1367(c)(3). Plaintiff is free to refile his breach of contract claim in state court within the time constraints set forth in 28 U.S.C. § 1367(d)." The Clerk is directed to enter judgment for Defendant on Count I of Plaintiff's Complaint and thereafter, in accordance with this order, to close this file.