*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

JAMIE M. SMITH,

        Plaintiff-Appellant,

v

DEPARTMENT OF HEALTH AND HUMAN
SERVICES,

        Defendant-Appellee.

UNPUBLISHED
March 24, 2022

No. 356328
Ingham Circuit Court
LC No. 19-000147-CD

Before: CAVANAGH, P.J., and MARKEY and SERVITTO, JJ.

PER CURIAM.

Plaintiff, Jamie M. Smith, was employed by defendant, the Department of Health and Human Services. She brought suit against defendant following her termination from employment. Plaintiff alleged that defendant engaged in disability discrimination in violation of the Persons with Disabilities Civil Rights Act (PWDCRA), MCL 37.1101 *et seq.* Plaintiff appeals by right the trial court's order granting defendant's motion for summary disposition under MCR 2.116(C)(10). We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff was diagnosed with multiple sclerosis (MS) in 2004 and began working for defendant as an eligibility specialist in 2007. In 2015, plaintiff took a medical leave of absence related to her MS and, after being off work for about a year and a half, she returned to her job in July 2016. During her first six months back at work, plaintiff was assigned a limited caseload. Plaintiff's six-month review reflected that she had satisfied most, but not all, of her performance objectives. Following that six-month review, plaintiff was assigned a full caseload.

In March 2017, a new supervisor, Daryl Showers, was appointed to oversee plaintiff's position. Upon beginning his job as supervisor, Showers spoke with plaintiff's previous supervisor and learned that plaintiff needed additional assistance completing her work and was not meeting performance standards. Showers increased plaintiff's "case read status" from 50% to 100%, meaning that 100% of her cases would first have to be reviewed before they could be submitted. In reviewing plaintiff's work, Showers observed that she had problems with timeliness and

-1-

accuracy. He commenced daily meetings to help plaintiff identify and prioritize casework and provided her with itemized explanations of errors and related corrections. Showers also implemented a new series of expectations for plaintiff. From the time Showers started as plaintiff's supervisor until her termination in December 2017, plaintiff received poor performance reviews and formal counseling every six weeks for the same issues, including failure to meet standards of promptness, failure to consistently return phone calls, and failure to complete reviews on time.

In this case, plaintiff relied heavily on the following testimony that she gave during her deposition:

> *A.* I asked [Showers] a couple times, not asked, I stated to him on more than one occasion that I said I feel like, after returning from another extended medical leave due to my MS, I said I feel that I have been targeted as an undesirable employee and that, you know, I'm being singled out, that I'm being, you know, picked on.
>
> *Q.* Okay.
>
> *A.* And he made no comment at all, he didn't deny it, he obviously didn't confirm it, but he didn't say no, no, that's not it. I said I feel like I am being discriminated against. I feel I've been targeted as an undesirable employee. I said it on more than one occasion and he would not deny it, he had nothing to say, he just kind of stared awkwardly at me.

In plaintiff's complaint, she alleged that Showers intended to effectuate plaintiff's failure by assigning her a full caseload at 100% read status, which was unprecedented and drastically reduced her productivity. Plaintiff contended that Showers excessively scrutinized her work performance because of her disability and that she would have been able to satisfactorily perform her job if Showers had treated plaintiff as he treated her peers. Plaintiff further alleged that her termination constituted an adverse employment action that was made on the basis of unlawful discrimination, i.e., plaintiff's MS disability.

Defendant moved for summary disposition under MCR 2.116(C)(10), arguing that plaintiff failed to produce any evidence that she was discharged because of her disability or that defendant's reasons for terminating her employment were pretextual. The trial court granted defendant's motion, concluding that plaintiff failed to present direct or circumstantial evidence of discrimination. The trial court further determined that even if plaintiff had established a prima facie case of discrimination, defendant presented a legitimate, nondiscriminatory reason for plaintiff's termination absent any counter evidence produced by plaintiff demonstrating pretext. Plaintiff filed a motion for reconsideration, which the trial court denied. Plaintiff now appeals.

## II. ANALYSIS

### A. STANDARD OF REVIEW AND SUMMARY DISPOSITION PRINCIPLES

We review de novo a trial court's decision on a motion for summary disposition. *Hoffner v Lanctoe*, 492 Mich 450, 459; 821 NW2d 88 (2012). In *Batista v Office of Retirement Servs*, ___ Mich App ___, ___; ___ NW2d ___ (2021) (Docket No. 353832); slip op at 9, this Court set forth the principles governing examination of a motion brought under MCR 2.116(C)(10):

> MCR 2.116(C)(10) provides that summary disposition is appropriate when, "[e]xcept as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." A motion brought pursuant to MCR 2.116(C)(10) tests the factual support for a party's action. "Affidavits, depositions, admissions, or other documentary evidence in support of the grounds asserted in the motion are required . . . when judgment is sought based on subrule (C)(10)," MCR 2.116(G)(3)(b), and such evidence, along with the pleadings, must be considered by the court when ruling on the (C)(10) motion, MCR 2.116(G)(5). "When a motion under subrule (C)(10) is made and supported . . ., an adverse party may not rest upon the mere allegations or denials of his or her pleading, but must, by affidavits or as otherwise provided in this rule, set forth specific facts showing that there is a genuine issue for trial." MCR 2.116(G)(4). A trial court may grant a motion for summary disposition under MCR 2.116(C)(10) if the pleadings, affidavits, and other documentary evidence, when viewed in a light most favorable to the nonmovant, show that there is no genuine issue with respect to any material fact. A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ. The trial court is not permitted to assess credibility, weigh the evidence, or resolve factual disputes, and if material evidence conflicts, it is not appropriate to grant a motion for summary disposition under MCR 2.116(C)(10). Like the trial court's inquiry, when an appellate court reviews a motion for summary disposition, it makes all legitimate inferences in favor of the nonmoving party. A court may only consider substantively admissible evidence actually proffered by the parties when ruling on the motion. [Quotation marks and citations omitted; ellipses in original.]

## B. DISABILITY DISCRIMINATION

Under the PWDCRA, an employer shall not "[d]ischarge or otherwise discriminate against an individual with respect to compensation or the terms, conditions, or privileges of employment, because of a disability or genetic information that is unrelated to the individual's ability to perform the duties of a particular job or position." MCL 37.1202(1)(b); see *Peden v Detroit*, 470 Mich 195, 203-204; 680 NW2d 857 (2004). "To prove a discrimination claim under the [PWDCRA], the plaintiff must show (1) that he is [disabled] as defined in the act, (2) that the [disability] is unrelated to his ability to perform his job duties, and (3) that he has been discriminated against in one of the ways delineated in the statute." *Chmielewski v Xermac, Inc*, 457 Mich 593, 602; 580 NW2d 817 (1998). Discrimination may be established by direct or circumstantial evidence. *Sniecinski v Blue Cross & Blue Shield of Mich*, 469 Mich 124, 132; 666 NW2d 186 (2003).

## 1. DIRECT EVIDENCE

First, plaintiff argues that Showers's silence in the face of plaintiff's accusation of discrimination constituted direct evidence of discrimination. Direct evidence is "evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Sniecinski*, 469 Mich at 133 (quotation marks and citations omitted). In *Bachman v Swan Harbour Assoc*, 252 Mich App 400, 433; 653 NW2d 415 (2002), this Court discussed the nature of direct evidence of discrimination:

> In this case, plaintiff testified that during the course of a confrontation with defendant Dawn Combs, Combs stated: "I don't know who you people think you are but you are not going to get any special treatment here." Plaintiff claims that this statement constitutes direct evidence of discrimination. Although this remark may be subject to varying interpretations, we agree that plaintiff has presented direct evidence of discrimination under the PWDCRA. Further, defendant Combs' alleged remark occurred before plaintiff was assessed a $50 furniture moving fee, which, as stated below, could be construed as treating plaintiff differentially. Although defendant Combs denied making such a comment, the matter was one of credibility, and it is the jury's duty to weigh credibility. [Quotation marks and citations omitted.]

And in *DeBrow v Century 21 Great Lakes, Inc*, 463 Mich 534, 538; 620 NW2d 836 (2001), our Supreme Court observed:

> Here, the plaintiff has direct evidence of unlawful age discrimination. The plaintiff testified during his deposition that, in the conversation in which he was fired, his superior told him that he was "getting too old for this shit." We recognize that this remark may be subject to varying interpretations. It might reasonably be taken as merely an expression of sympathy that does not encompass a statement that the plaintiff's age was a motivating factor in removing him from his position as an executive. However, it is well established that, in reviewing a decision on a motion for summary disposition under (C)(10), we must consider the documentary evidence presented to the trial court in the light most favorable to the nonmoving party. According to the plaintiff's deposition testimony, the remark was made during the conversation in which the plaintiff's superior informed him that he was being fired. Considered in the light most favorable to the plaintiff, this remark could be taken as a literal statement that the plaintiff was "getting too old" for his job and this was a factor in the decision to remove him from his position. While a factfinder might be convinced by other evidence regarding the circumstances of the plaintiff's removal that it was not motivated in any part by the plaintiff's age and that the facially incriminating remark was no more than an expression of sympathy, such weighing of evidence is for the factfinder, not for this Court in reviewing a grant of a motion for summary disposition. [Quotation marks and citations omitted.]

In this case, plaintiff does not rely on anything Showers said to her as proof of direct discrimination; rather, plaintiff relies on Showers's silence during personal confrontations in which she told him that she had been "singled out," "targeted," "picked on," and "discriminated

against." In *Ali v Stetson Univ, Inc*, 340 F Supp 2d 1320, 1324-1325 (MD Fla, 2004), the federal court addressed a comparable argument and ruled as follows:

> Plaintiff claims that, during his grievance hearing, his mother asked members of Stetson's appeals board if Plaintiff was suspended "because of his name," that is, Plaintiff's Iranian ethnicity. According to Plaintiff, the board, which included Dean Espinosa, did not answer his mother's allegation. Plaintiff argues that the failure of the board, and particularly of Espinosa, to respond "can be seen as an admission of race discrimination" and thus as direct evidence of discrimination.
>
> Even if such a failure to respond "can be seen as an admission of race discrimination," it is nevertheless not direct evidence. To say that the board's silence "can be seen" as reflecting an intent to discriminate necessarily implies that it may also be seen otherwise. For example, the board's failure to respond might be seen instead as reflecting its offense at the insinuation that its actions were discriminatory. Whatever might have been behind the board's silence, it is not in the nature of a remark "whose intent could be nothing other than to discriminate." Rather, it is only by inference that one could conclude that the board's failure to respond indicated its assent to the question asked of it. Thus, Plaintiff's direct evidence argument fails. [Legal and record citations omitted.]

We find this reasoning by the federal court to be persuasive and adopt it for purposes of our case. Accordingly, we conclude as a matter of law that Showers's silence in the face of plaintiff's discrimination accusations did not constitute direct evidence of disability discrimination.

## 2. CIRCUMSTANTIAL EVIDENCE

Because plaintiff failed to present direct evidence of discrimination, she was required to present sufficient circumstantial evidence to establish a prima facie case of discrimination. In *Sniecinski*, 469 Mich at 133-134, our Supreme Court discussed the proper analysis:

> In cases involving indirect or circumstantial evidence, a plaintiff must proceed by using the burden-shifting approach set forth in *McDonnell Douglas Corp v Green*, 411 US 792; 93 S Ct 1817; 36 L Ed 2d 668 (1973). This approach allows a plaintiff to present a rebuttable prima facie case on the basis of proofs from which a factfinder could infer that the plaintiff was the victim of unlawful discrimination. To establish a rebuttable prima facie case of discrimination, a plaintiff must present evidence that (1) she belongs to a protected class, (2) she suffered an adverse employment action, (3) she was qualified for the position, and (4) her failure to obtain the position occurred under circumstances giving rise to an inference of unlawful discrimination. Once a plaintiff has presented a prima facie case of discrimination, the burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action. If a defendant produces such evidence, the presumption is rebutted, and the burden shifts back to the plaintiff to show that the defendant's reasons were not the true

reasons, but a mere pretext for discrimination. [Quotation marks and citations omitted.]

In the context of the instant case, the fourth element pertains to presenting evidence that plaintiff was terminated under circumstances giving rise to an inference of unlawful discrimination. Defendant does not dispute that plaintiff was disabled, was generally qualified for her job, and suffered an adverse employment action. At issue, therefore, is whether plaintiff's termination occurred under circumstances giving rise to an inference of unlawful discrimination. Plaintiff argues that Showers, prompted by plaintiff's disability and periodic need for medical leave, imposed onerous performance standards, which were a radical departure from defendant's standard practice, as part of his scheme to set plaintiff up for failure.

The circumstances surrounding plaintiff's case-read status do not give rise to an inference of unlawful discrimination. The record supports plaintiff's contention that she was assigned a full caseload and placed on 100% case-read status, which was not a typical assignment for employees without performance issues, but it was not unheard of with respect to new employees or those with performance issues. Although the record reflects that plaintiff met or exceeded most expectations at the time of her six-month performance review, the record also reveals that her previous supervisor conveyed new concerns about plaintiff's performance to Showers, who then increased her case-read requirement to 100%. Rather than giving rise to an inference of discrimination, the imposition of the 100% case-read status supports the inference that plaintiff's supervisors noticed performance issues and thus wanted all of her work to be reviewed.

Showers's actions after increasing plaintiff's case read-status similarly did not give rise to an inference of unlawful discrimination. As Showers reviewed plaintiff's work, he noticed that plaintiff was not submitting all her cases for review as required, and she produced a significant number of errors in the cases that she did submit. The record reflects that Showers implemented a plan that correlated with the issues he observed in plaintiff's performance. There is nothing to suggest that Showers's plan was motivated by plaintiff's disability or her having taken a medical leave six months earlier.

Moreover, even if plaintiff had successfully presented a prima facie case of discrimination,[1] defendant rebutted the presumption by articulating a legitimate, nondiscriminatory reason for imposing the more stringent case-read requirements and then terminating plaintiff's employment.

Again, "[o]nce a plaintiff has presented a prima facie case of discrimination, the burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action." *Sniecinski*, 469 Mich at 134. And "[i]f a defendant produces such evidence, the presumption is rebutted, and the burden shifts back to the plaintiff to show that the defendant's reasons were not the true reasons, but a mere pretext for discrimination." *Id.* "An employer's

---

[1] It is arguable that Showers's silence when confronted with plaintiff's claims of discrimination constituted evidence that the termination occurred under circumstances giving rise to an inference of unlawful discrimination.

legitimate, nondiscriminatory reasons for firing an employee can be established as pretext (1) by showing the reasons had no basis in fact, (2) if they have a basis in fact, by showing that they were not the actual factors motivating the decision, or (3) if they were factors, by showing that they were jointly insufficient to justify the decision." *Jewett v Mesick Consol Sch Dist*, 332 Mich App 462, 475; 957 NW2d 377 (2020) (quotation marks and citation omitted).[2]

In this case, plaintiff's previous supervisor related concerns about plaintiff's performance to Showers, who also began to notice issues with plaintiff's performance and consequently imposed an increased review requirement. Plaintiff continued to demonstrate an inability to

---

[2] "[T]he fact that a plaintiff has established a prima facie case of discrimination under *McDonnell Douglas* does not necessarily preclude summary disposition in the defendant's favor." *Hazle v Ford Motor Co*, 464 Mich 456, 463-464; 628 NW2d 515 (2001). A prima facie case under *McDonnell Douglas* does not describe the plaintiff's burden of production, but merely establishes a rebuttable presumption. *Id.* at 464. Therefore, "once a plaintiff establishes a prima facie case of discrimination, the defendant has the opportunity to articulate a legitimate, nondiscriminatory reason for its employment decision in an effort to rebut the presumption created by the plaintiff's prima facie case." *Id.* Our Supreme Court in *Hazle*, *id.* at 464-466, further explained the analytical process, stating:

> The articulation requirement means that the defendant has the burden of producing evidence that its employment actions were taken for a legitimate, nondiscriminatory reason. Thus, the defendant cannot meet its burden merely through an answer to the complaint or by argument of counsel. If the employer makes such an articulation, the presumption created by the *McDonnell Douglas* prima facie case drops away.

> At that point, in order to survive a motion for summary disposition, the plaintiff must demonstrate that the evidence in the case, when construed in the plaintiff's favor, is sufficient to permit a reasonable trier of fact to conclude that discrimination was a motivating factor for the adverse action taken by the employer toward the plaintiff. . . . [A] plaintiff must not merely raise a triable issue that the employer's proffered reason was pretextual, but that it was a pretext for [unlawful] discrimination.

> The inquiry at this final stage of the *McDonnell Douglas* framework is exactly the same as the ultimate factual inquiry made by the jury: whether consideration of a protected characteristic was a motivating factor, namely, whether it made a difference in the contested employment decision. The only difference is that, for purposes of a motion for summary disposition or directed verdict, a plaintiff need only create a question of material fact upon which reasonable minds could differ regarding whether discrimination was a motivating factor in the employer's decision. [Citations and quotation marks omitted; second alteration in original.]

satisfactorily perform her duties after the case-read status was increased to 100%, and her performance continued to deteriorate in the following months, which ultimately culminated in her termination from employment. Plaintiff's inadequate performance was a legitimate, nondiscriminatory reason for the adverse employment actions.

After defendant articulated legitimate, nondiscriminatory reasons for terminating plaintiff's employment, the burden shifted back to plaintiff to show that defendant's reasons were a mere pretext for discrimination. Plaintiff argues that defendant's reasons for firing her were pretextual because Showers imposed the 100% case-read requirement on his first day as supervisor, before he even had a chance to develop an informed opinion that plaintiff was not performing at an acceptable level.

The record reflects, however, that plaintiff's performance issues began before Showers started as supervisor. Therefore, the timing of the change in plaintiff's case-read status does not support plaintiff's argument that defendant's articulated reasons for the adverse employment action were without any basis in fact, were not the actual reasons motivating the termination, or were otherwise insufficient to justify the decision to fire plaintiff. In fact, plaintiff acknowledged that the negative remarks contained in the formal counseling documents and performance reviews were accurate. Moreover, the record reveals that plaintiff had issues beyond her inability to meet standards of promptness, such as failing to consistently return client calls and making errors in her work. Plaintiff has failed to show that the documentary evidence was sufficient to permit a reasonable trier of fact to conclude that discrimination was a motivating factor in terminating plaintiff's employment. Because defendant articulated proper reasons for plaintiff's discharge and plaintiff failed as a matter of law to demonstrate that defendant's reasons were pretextual, the trial court properly granted summary disposition in favor of defendant.[3]

We affirm. Having fully prevailed on appeal, defendant may tax costs under MCR 7.219.

/s/ Mark J. Cavanagh
/s/ Jane E. Markey
/s/ Deborah A. Servitto

---

[3] Plaintiff also argues, with little analysis, that the trial court made a slew of errors in its opinion granting defendant's motion for summary disposition, the correction of which would lead to a different result. Our review of the record does not bear out plaintiff's allegations in this regard, except she is correct that the trial court apparently misconstrued the record as it related to the 25 other employees on case-read status. The record indicates that those employees were placed on 100% case-read status by a variety of supervisors over the course of several years, not by Showers at the time he became supervisor. But the trial court's misstatement was not of sufficient import so as to undermine our conclusion that the court properly granted defendant's motion for summary disposition for the above-explained reasons. We further conclude that the trial court did not abuse its discretion by denying plaintiff's motion for reconsideration given that plaintiff failed to show that a different ruling on the motion for summary disposition would result from correction of any errors. See MCR 2.119(F)(3).